Charles W. HAM, Claimant Below,
Appellant,

v.

CHRYSLER CORPORATION, Employ-
er Below, Appellee.

Supreme Court of Delaware.

May 23, 1967.

Frank J. Gentile, Jr., Wilmington, for claimant below, appellant.

Carl Schnee, Wilmington, for employer below, appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice:

Upon this appeal, we are called upon to define further the term "total disability" as used in the Delaware Workmen's Compensation Law. Compare Hartnett v. Coleman, Del., 226 A.2d 910 (1967).

## I.

The claimant, Charles W. Ham, was an ordinary unskilled laborer and had been such all his adult life. He reached the eighth grade in school; he had no special occupational training or skills. Prior to his employment by the Chrysler Corporation, he worked at odd jobs including trucking, farming and mill work. For many years prior to the accident here involved, Ham worked for Chrysler as a general laborer, doing pick-and-shovel and janitorial work. In 1962, while working as a clean-up man in Chrysler's paint department, Ham suffered a fractured left hip compensable under the Delaware Workmen's Compensation Law. A compensation agreement was

entered into promptly, based upon temporary total disability. During the ensuing months, Ham remained unemployed. He could not perform the work of his last employment. Chrysler had a program of limited work for employees handicapped on the job, but no such employment was made available to the claimant.

In 1965 when Ham was about 57 years old, Chrysler petitioned the Industrial Accident Board to review the compensation agreement on the ground that Ham's total disability had terminated. After hearing, the Board ordered the temporary total disability terminated and directed the parties to enter into a supplemental agreement for scheduled compensation based upon 75% loss of use of the left leg. The Board failed to award attorney's fees to the claimant. Ham appealed to the Superior Court and it affirmed upon the record before the Board. Thereupon, Ham brings this appeal.

 *The scope of our function is to determine whether there was sufficient evidence to support the findings and conclusions of the Board. Hartnett v. Coleman, supra.* Accordingly, we have reviewed the evidence. The following, we think, is a fair summary of the medical testimony given by four physicians:

As the result of the hip fracture and treatment thereof, the claimant's left leg is approximately 2 inches shorter than the right. There has been atrophy of the entire left extremity, consisting of approximately 2 inches in the circumference of the thigh and about 1 inch in the circumference of the calf. Because of malalignment during union of the fracture, the claimant's foot is twisted into an abnormal position. During treatment for the hip fracture, Ham suffered a nerve palsy causing a foot drop; the drop has been corrected but the foot remains weak and numb.

Although the claimant's left leg will bear weight, loss of motion in the hip and malposition of the foot prevent normal weight bearing. The flexion in the claimant's hip is approximately 90 degrees. The claimant has difficulty in bending and reaching a full crouch. Prolonged standing causes back discomfort. He cannot lift or carry objects weighing more than 25 pounds. He cannot perform strenuous, manual, or heavy work. His work activities are limited to unnamed "sedentary" or "light"[1] or "bench" work. Any work that the claimant could do regularly would be restricted to about 50% standing time and would not require lifting, bending, or prolonged walking or climbing. As to the claimant's permanent loss of use of the leg and foot, the medical testimony varied between 60% and 80%. In addition to physical injuries, the claimant's emotional and mental outlook regarding his work-life has been impaired. Thus was the claimant's future work capability described in the medical testimony.

The claimant testified that he suffers pain if he remains in the same position any length of time; that his foot becomes numb; that he is unable to stand without pain and must use a cane or crutch to get around; that because of pain and the position of his foot, he must walk "a bit sideways".

---

1. The only specification of the "light" work, for which the claimant may be qualified, is contained in the testimony of one doctor who stated, without any indication of levity on the record, that Ham could do "watch making". This witness also testified that Ham could drive a taxicab, but could not help passengers with baggage or otherwise. Of interest, in this connection, is the statement appearing in Petter v. K. W. McKee, Inc., 270 Minn. 362, 133 N.W.2d 638, 641 (1965):

" * * * [L]ight work is always associated with skill. The greater the skill the lighter the work, and when you take a skill away from the man and leave him unskilled, then there is no such thing as light work. That phrase is tossed around too freely. I would like an explanation from the doctor what he means by light work in the field of competitive employment."

## II.

In Hartnett v. Coleman, supra, we stated that the degree of compensable disability depends upon the degree of impairment of earning capacity. To be more specific, the determination of total disability requires a consideration and weighing of not only the medical and physical facts but also such factors as the employee's age, education, general background, occupational and general experience, emotional stability, the nature of the work performable under the physical impairment, and the availability of such work. The proper balancing of the medical and wage-loss factors is the essence of the problem. 2 Larson, Workmen's Compensation Law, § 57.10; Unora v. Glen Alden Coal Co., 377 Pa. 7, 104 A.2d 104 (1954). ° Otherwise stated, the finder of fact must take into consideration not only the medical testimony but also the facts and circumstances that may relate to the claimant as a "unit of labor" in his handicapped condition. A workman may be totally disabled economically, and within the meaning of the Workmen's Compensation Law, although only partially disabled physically. In this connection, inability to secure work, if causally connected to the injury, is as important a factor as the inability to work. Lightner v. Cohn, 76 N.J.Super. 461, 184 A.2d 878 (1962); 2 Larson, Workmen's Compensation Law, § 57.61.

In *Hartnett,* we approved the principle of the so-called "odd lot" doctrine.[2] The term is used to refer to a worker who, while not completely incapacitated for work, is so handicapped by a compensable injury that he will no longer be employed regularly

in any well known branch of the competitive labor market and will require a specially-created job if he is to be steadily employed. In lieu of the "odd lot" or "nondescript" terminology sometimes used in this connection, we choose to refer to such worker, hereinafter, as one "displaced" from the regular labor market.

The origin of the doctrine and its related rule of evidence may be found in Cardiff Corp. v. Hall, 1 K.B. 1009 (1911):

> "But, on the other hand I am also of the opinion that there are cases in which the onus of shewing that suitable work can in fact be obtained does fall upon the employer who claims that the incapacity of the workman is only partial. If the accident has left the workman so injured that he is incapable of becoming an ordinary workman of average capacity in any well-known branch of the labour market—if in other words the capacities for work left to him fit him only for special uses and do not, so to speak, make his powers of labour a merchantable article in some of the well-known lines of the labour market, I think it is incumbent on the employer to shew that such special employment can in fact be obtained by him. If I might be allowed to use such an undignified phrase I should say that if the accident leaves the workman's labour in the position of an 'odd lot' in the labour market, the employer must shew that a customer can be found who will take it."

The doctrine and the rule have been widely adopted. E. g., Unora v. Glen Alden Coal Co., supra; Lightner v. Cohn, supra;

2. Referring to Lee v. Minneapolis Street Railway Co., 230 Minn. 315, 41 N.W.2d 433 (1950), the test of which we quoted with approval in *Hartnett,* Professor Larson states:
 "The test quoted from the Minnesota opinion * * * is essentially the same as the so-called 'odd-lot' doctrine, which is a term used to refer to workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well-known branch of the labor market. The essence of the test is the probable dependability with which claimant can sell his services in a competitive labor market, undistorted by such factors as business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his crippling handicaps." 2 Larson, Workmen's Compensation Law, pp. 27–28.

Transport Indemnity Co. v. Industrial Accident Commission, 157 Cal.App.2d 542, 321 P.2d 21 (1958); Lunsford v. A. C. Lawrence Leather Co., 189 Tenn. 293, 225 S. W.2d 66 (1949); Richardson v. City of Tampa, Fla., 175 So.2d 43 (1965); In re Iles, 56 Wyo. 443, 110 P.2d 826 (1941); Wheeler v. Northwestern Metal Co., 175 Neb. 841, 124 N.W.2d 377 (1963); General Motors Corp. v. Boggs, 109 Ga.App. 839, 137 S.E.2d 569 (1964). A modern version of the rule has been stated by the Pennsylvania Supreme Court in the leading case of Unora v. Glen Alden Coal Co., supra:

" * * * Where the injured person can handle only a specially-created job, one light of effort and responsibility but laden with rest and comfort (employment plums that do not often dangle from the tree of everyday economics) the burden is on the defendant-employer to show that such a job is in fact within reach. If proof of that fact is not presented, the claimant then is entitled to a finding of total disability. * * *."

■ Applying the rule, we hold that a "displaced" claimant must be deemed totally disabled, within the meaning of the Workmen's Compensation Law, unless the employer is able to show the availability of regular employment within the claimant's capabilities. The rationale of the rule is fair and logical, we think, and in the spirit of the Workmen's Compensation Law. If the labor market offers regular employment to a claimant, so handicapped by a compensable injury as to disqualify him from obtaining regular work in any well known branch of the competitive labor market, the employer is in a better position to ascertain that fact than is the employee. Under such circumstances, the burden of proof fairly and properly rests with the employer.

■ Returning to the instant case: the uncontroverted evidence clearly shows that Ham's condition, at the time of the hearing before the Board, left him in the "displaced" category. He has no education, training, experience, or skills to qualify him for any kind of work except that of general laborer. He cannot bend, stand, walk or climb for long, and he cannot lift. He is able to do only certain unnamed "sedentary" or "light" work. This, in our judgment, portrays a man disqualified for regular employment in any well known branch of the competitive labor market, for whom a job must be specially-created if he is to be steadily employed. He must be classified, therefore, as a "displaced" worker.

Having reached this conclusion, under the rule we find apposite, we hold that Chrysler is obliged to show the availability of regular employment within Ham's capabilities. In the absence of such proof, the claimant's total disability must be deemed to continue. Since the present record is devoid of such proof, we conclude there is insufficient evidence to support the Board's finding that Ham's total disability has terminated.

■ Upon remand, Chrysler shall have the opportunity of going forward with evidence to show the availability of regular employment within Ham's capabilities. Ham's admitted failure to seek employment elsewhere does not relieve Chrysler of that burden. If, however, Chrysler sustains the burden, the failure of Ham to seek or accept employment, and the reasons therefor, may become relevant to the issue of his total disability.

### III.

The Board did not allow an attorney's fee to the claimant under 19 Del.C. § 2127.[3]

3. 19 Del.C. § 2127, as it existed at the time of the Board's hearing, provided:
"§ 2127. Attorney's fees
"Subject to approval by the Board, a reasonable attorney's fee, in the amount of 30% of the award or $500., whichever is smaller, may be allowed any employee awarded compensation under Part II of this Title, and taxed as costs against a party."
Compare § 2127 as amended in 1966.

No reason is stated. It appears that the claimant inadvertently failed to request the allowance before the case was removed from the Board's jurisdiction on the appeal.

The clear purpose of § 2127 was and is to relieve a successful claimant of the burden of legal fees and expenses, at least in part. This legislative intent should not be defeated by a claimant's inadvertence or unawareness. The Board has the duty, in our view, to give force and effect to § 2127, *sua sponte* if necessary, and, except for sufficient reasons stated, to allow counsel fees under the Statute.

\* \* \*

The judgment below is reversed and the cause remanded for further proceedings consistent herewith.