**PEUCHEN, INC., Employer-Appellant,**

**v.**

**Charles HELUCK, Employee-Appellee.**

Superior Court of Delaware,
New Castle.

Submitted July 19, 1978.

Decided Aug. 8, 1978.

Stephen P. Casarino, and John A. Elzufon, of Tybout & Redfearn, Wilmington, for Peuchen, Inc.

John G. Abramo, of Abramo & Abramo, Wilmington, for Charles Heluck.

TAYLOR, Judge.

Charles Heluck, appellee [employee] suffered an industrial accident on April 9, 1975 when he jumped from a truck to the concrete floor. An agreement was entered into March 30, 1976 between employee and Peuchen, Inc., appellant, [employer] providing for payment of compensation commencing March 3, 1976. On September 28, 1976 employer's insurance carrier petitioned for review of compensation agreement claiming that the disability had terminated. After hearing, the Board held that the industrial accident is the cause of employee's back pain, that employee is prevented by that pain from performing his general labor duties and that upon the basis that employee is a displaced worker employer had failed to sustain its burden of proving availability of regular employment within employee's capability. Accordingly, the Board denied the petition to terminate compensation.

Employer's position is that employee is not within the displaced worker doctrine. Employer relies on the language in *Hensley v. Artic Roofing, Inc.*, Del.Supr., 369 A.2d 678 (1976) in which the Supreme Court in a Per Curiam Opinion dealing with the applicability of the displaced worker doctrine to an injured employee whom the Opinion characterized as a general laborer stated that one of the requirements for treatment under the displaced worker doctrine is that "he must show that he is an unskilled worker, unable to perform any task other than general labor".

It will be noted that *Hensley* cites *Ham v. Chrysler Corporation*, Del.Supr., 231 A.2d 258 (1967) and *M. A. Hartnett, Inc. v. Coleman*, Del.Supr., 226 A.2d 910 (1967) as the background cases for its recitation of requirements of the displaced worker doctrine. In *Ham*, the Court characterized the employee as "an ordinary unskilled laborer," and in *Coleman*, the Court characterized the employee as "an illiterate laborer." Hence, the factual setting of *Hensley, Ham* and *Coleman* corresponded to the characterization of "general laborer" as used in *Hensley*. However, in *Franklin Fabricators v. Irwin*, Del.Supr., 306 A.2d 734 (1973), the Supreme Court accepted the status of displaced worker for an employee who was a

steel fabricator and erector. In *Bigelow v. Sears, Roebuck & Company*, Del.Supr., 260 A.2d 906 (1969), the Supreme Court accepted the same principle as being applicable to a trained interior decorator. The nature of the injured employee's work involved in *Chrysler Corporation v. Duff*, Del.Supr., 314 A.2d 915 (1973) is not described. In *Huda v. Continental Can Company, Inc.*, Del. Supr., 265 A.2d 34 (1970) the principle of *Ham* was applied to a partially incapacitated secretary. In *Howell v. Supermarkets General Corporation*, Del.Supr., 340 A.2d 833 (1975) the displaced worker principle was applied to a part-time cashier.

■ With the exception of *Hensley*, the Supreme Court's prior discussions of the principle do not indicate that the displaced worker doctrine is limited to unskilled laborers. In *Coleman*, the Supreme Court stated (at page 913):

> " 'Total disability' means a disability which prevents an employee from obtaining employment commensurate with his qualifications and training. Compare *Federal Bake Shops, Inc. v. Maczynski*, 4 Storey 484, 180 A.2d 615 (1962); 2 Larson's Workmen's Compensation Law, §§ 57.22, 57.53. The term means such disability that the employee is unable to perform any services 'other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist.' *Lee v. Minneapolis Street Railway Co.*, 230 Minn. 315, 41 N.W.2d 433 (1950). 'Total disability' may be found, in spite of sporadic earnings, if the claimant's physical condition is such as to disqualify him from regular employment in any well-known branch of the labor market. Conversely, when the claimant is unable to obtain employment because of his physical condition, medical evidence that he could perform such work, if he could get it, will not detract from his status of total disability. It has been well stated that the essence of the test of total disability is 'the probable dependability with which claimant can sell his services in a compet-

itive labor market, undistorted by such factors as business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his crippling handicaps.' See 2 Larson's Workmen's Compensation Law, §§ 57.00, 57.51."

In *Ham*, the Supreme Court stated (at page 261):

> "In *Hartnett*, we approved the principle of the so-called 'odd lot' doctrine. The term is used to refer to a worker who, while not completely incapacitated for work, is so handicapped by a compensable injury that he will no longer be employed regularly in any well known branch of the competitive labor market and will require a specially-created job if he is to be steadily employed. In lieu of the 'odd lot' or 'non-descript' terminology sometimes used in this connection, we choose to refer to such worker, hereinafter as one 'displaced' from the regular labor market." [1]

In *Irwin*, the Supreme Court said (at page 737):

> "In this class of case, we apply the 'general-purpose principle on burden of proof', approved at 2 Larson, Workmen's Compensation Law § 57.61, pp. 88.16–88.-19: If the evidence of degree of obvious physical impairment, coupled with other factors such as the injured employee's mental capacity, education, training, or age, places the employee prima facie in the 'odd-lot' category, as defined in *Hartnett* and *Ham*, the burden is on the employer, seeking to terminate total disability compensation, to show the availability to the employee of regular employment within the employee's capabilities."

In *Duff*, the Supreme Court stated the principle in the following language (at page 917):

> "The term 'displaced' worker is used to refer to a worker who, while not completely incapacitated for work, is so handicapped by a compensable injury that he will no longer be employed regularly in

---

1. It appears that the cases have used "odd-lot" and "displaced" interchangeably.

any well known branch of the competitive labor market and will require a specially-created job if he is to be steadily employed." [2]

Similarly, the discussion and case citations in 2 *Larson's Workmen's Compensation Law* § 57.51, pp. 10–107–125 & § 57.61, pp. 10–130–144, which have been relied upon in part by the Delaware decisions do not indicate that the odd-lot or displaced worker doctrine is confined to the unskilled worker.

From the foregoing review of the Delaware decisions which preceded *Hensley v. Artic Roofing, Inc.*, supra, it appears that the application of the "odd-lot" or displaced worker doctrine has not been limited to general laborers. The discussion in the Per Curiam Opinion in *Hensley* does not indicate an intention to depart from the earlier Delaware decisions. In fact, *Hensley* cites *Ham v. Chrysler Corporation*, supra, and *M. A. Hartnett, Inc. v. Coleman*, supra, in support of its statement of the test. I conclude that the statement in *Hensley* was appropriate to the factual situation presented in *Hensley* and that it merely restated the test in the light of the *Hensley* facts. I do not find that *Hensley* heralded a departure from the Supreme Court decisions cited above or that it was intended to overrule those decisions.

■ Here, the Board found that employee was performing general labor duties and noted that his "only skills are mechanic, welding, pipe fitting". Employee's testimony was that he had engaged in crating a machine and putting it on the truck, chaining it in place, and that he was a mechanic who crawled in and out of machines, did pipe work, welding, burning and fabricat-

ing. The record does not show that employee's skills were such as to qualify him for one of the skilled trades. When tested according to prior decisions in which the displaced worker doctrine has been applied, the Board's finding on this subject is supported by substantial competent evidence and will be accepted. The limited nature of employee's skills is such that they qualify him for consideration under the displaced worker doctrine.

■ Employer does not contend that employee's condition is not causally related to the industrial accident. Nor does employer contend that employee is not restricted because of his disability as to the type of work he can do. The Board found that employee's condition is such as to prevent "the use of his back and lower extremities" and I find this is supported by substantial competent evidence.

Employer points out that the issue of whether or not employee was a displaced worker under that doctrine was not raised at any time during the proceedings before the Board, but was first raised by the Board in its decision. In view of this, employer contends that it should be afforded an opportunity to present evidence which could relieve it of compensation liability. Historically, confusion has existed as to the procedure to be followed in applying the displaced worker doctrine. *Franklin Fabricators v. Irwin*, supra, established that a second hearing dealing specifically with the displaced worker doctrine issue is not required. However, fairness would indicate that an employer should be entitled to some advance notice that employee is relying on that doctrine.

---

**2.** In order to place the subject of the odd-lot or displaced worker doctrine in full prospective the Court observes that the subject has been further subdivided. A different burden is applied, depending upon whether the degree of physical impairment, coupled with other factors such as the injured employee's mental capacity, education, training, or age obviously places an injured employee prima facie in the "odd-lot" category. *Franklin Fabricators v. Irwin*, supra; *Chrysler Corporation v. Duff*, supra. If the evidence fails obviously to place the injured employee prima facie in the "odd-lot" category, the burden is upon the employee to show that he has made reasonable efforts to secure suitable employment which have been unsuccessful because of the injury as a prerequisite to consideration under the odd-lot or displaced worker doctrine. Ibid. If the employee's impairment meets the "obvious" test, he need not show efforts to obtain employment. Ibid.

The Supreme Court has held that it is not necessary for the employer to show the availability of regular employment within the injured employee's capabilities in every case where termination of total disability is an issue. *General Foods Corporation v. Twilley,* Del.Supr., 341 A.2d 711 (1975); *Howell v. Supermarkets General Corp.,* Del. Supr., 340 A.2d 833 (1975).

 The question of whether a case may fall within the displaced worker doctrine is a matter which properly should be explored at a stage prior to the hearing. In this way both sides can be aware of the proof which they must present—both direct and rebuttal. Here, it appears that the matter was not raised or explored prior to the hearing and that no argument involving that doctrine was made even at the close of the hearing.

 It is recommended that in view of the technical nature of the doctrine and its limited applicability, if it is to be an issue, a procedure should be established by the Board whereby the parties would be alerted to that fact before the hearing. Against the background described above, I conclude that employer should have the opportunity to produce evidence on the subject which the Board raised after hearing. Accordingly, the case is remanded to the Board for the limited purpose of hearing evidence on the subject of the availability of regular employment within the capability of employee.

IT IS SO ORDERED.