IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LESHAWN WASHINGTON | § | |
| | § | No. 333, 2019 |
| Appellant-Below, | § | |
| Appellant, | § | |
| | § | Court Below: |
| v. | § | Superior Court |
| | § | of the State of Delaware |
| DELAWARE TRANSIT CORP., | § | |
| | § | |
| Appellee-Below, | § | C.A. No.  N18A-12-007 |
| Appellee. | § | |

Submitted:  January 15, 2020
Decided:  March 2, 2020

Before **VALIHURA**, **VAUGHN**, and **TRAYNOR**, Justices.

Upon appeal from the Superior Court.  **REVERSED** and **REMANDED**.

Michael I. Silverman, Esquire, Adrienne M. McDonald, Esquire, Silverman McDonald & Friedman, Wilmington, Delaware for Appellant.

John J. Klusman, Esquire, Kenneth L. Wan, Esquire, Tybout Redfearn & Pell, Wilmington, Delaware for Appellee.

**VALIHURA**, Justice:

This is an appeal of a July 22, 2019 decision by the Superior Court affirming the November 28, 2018 Order (the "Order") of the Industrial Accident Board (the "IAB" or "Board") granting Delaware Transit Corporation's ("DTC") motion to dismiss Claimant LeShawn Washington's ("Claimant") Petition seeking benefits for Permanent Impairment (the "PI Petition").

Claimant suffered an injury to his left shoulder in a work-related incident that occurred on August 4, 2016 and was placed on disability. Upon returning to work, he claimed that his shoulder symptoms had worsened. Claimant then filed a Petition seeking compensation for a recurrence of temporary total disability (the "TTD Petition"),[1] which the IAB denied (the "TTD Opinion"). Claimant then filed his PI Petition.

In preparing for the hearing on the PI Petition, both parties obtained medical expert opinions regarding the degree of Claimant's permanent impairment. Both parties' experts agreed that there was some degree of permanent impairment. Nevertheless, DTC moved to dismiss the PI Petition at the commencement of the hearing. DTC argued that the IAB had previously ruled on the matter during Claimant's TTD Petition hearing when it stated that Claimant had "fully recovered" from his work injury. The IAB agreed, and dismissed the PI Petition on that basis, before considering the permanent impairment testimony.[2]

---

[1] *Washington v. Del. Transit Corp.*, No. 1445577 (Del. I.A.B. Aug. 7, 2017), App. to Opening Br. at A20 [hereinafter *Washington I*].

[2] *Washington v. Del. Transit Corp.*, No. 1445577 (Del. I.A.B. Nov. 28, 2018), App. to Opening Br. at A18 [hereinafter *Washington II*].

Claimant appealed the IAB's decision to the Superior Court, arguing that the IAB never concluded that the Claimant had "fully recovered." In affirming the IAB's Order,[3] the Superior Court recognized that the IAB's "Findings of Fact and Conclusions of Law" section did not contain the words "fully recovered."[4] However, the court acknowledged that the phrase "fully recovered" was in the "Summary of Evidence" section.[5] The court highlighted the IAB's references to Dr. Gregory Tadduni's testimony that Claimant's shoulder examination was "normal," and that Claimant had "returned to normal."[6] The Superior Court then held that the Board had reasonably interpreted the TTD Opinion, and that the Board's decision to dismiss was supported by substantial evidence.

Claimant raises two issues on appeal. First, he asserts that the Superior Court erred in concluding that the Board had reasonably interpreted the TTD Opinion. He argues that the Board never considered the testimony regarding his permanent impairment because the issue considered by the experts in the temporary total disability context, although related, is different from the issue addressed by the experts in the permanent impairment context. Therefore, it was error for both the Board, and the Superior Court, to dismiss the PI Petition based solely on the testimony given in the total temporary disability context. Second, Claimant asserts that the Superior Court erred as a matter of law in holding that the Board's

---

[3] *Washington v. Del. Transit Corp.*, C.A. No. N18A-12-007 (Del. Super. July 22, 2019), App. to Opening Br. at A5 [hereinafter the "*Opinion*"].

[4] *Id.* at 10 n.24, App. to Opening Br. at A15 ("[T]he 'Findings of Fact and Conclusions of Law' section of the Board's TD Decision did not specifically state that the Board found that [Claimant] had 'fully recovered' . . . .").

[5] *Id.* ("[T]he fact section states that Dr. Tadduni concluded that [Claimant] had fully recovered.").

[6] *Id.* at 9–11, App. to Opening Br. at A14–A16.

3

dismissal of his PI Petition was supported by substantial evidence. Claimant argues that the Board did not have any evidence regarding his impairment because the Board dismissed the PI Petition without considering the testimony related to the PI Petition.

As explained below, we hold that the Superior Court erred in affirming the Board's decision to deny Claimant's PI Petition. Although the Board is permitted to interpret its own orders and rulings, the Board erred when it dismissed Claimant's PI Petition based solely on the expert testimony presented in connection with his TTD Petition. The TTD Petition addressed the question of whether Claimant had suffered a recurrence of a total disability, and whether Claimant could return to work. The TTD Petition did not address Claimant's degree of impairment. In this close case, we conclude that the Claimant should have the opportunity to present his evidence in a permanent impairment hearing. Accordingly, we **REVERSE** and **REMAND** this matter to the Superior Court.

*I.      Relevant Facts and Procedural Background*

Claimant worked for DTC as a bus driver.[7] On August 4, 2016, Claimant injured his left shoulder while driving on the job.[8]

On September 8, 2016, Claimant underwent surgery on his shoulder, which required him to be out of work for a period of time.[9] DTC agreed that Claimant was injured in the

---

[7] *Washington I*, No. 1445577, at 2, App. to Opening Br. at A21.

[8] *Id.* The Superior Court incorrectly lists the date of injury as April 4, 2016. *See Opinion*, C.A. No. N18A-12-007, at 2, App. to Opening Br. at A7.

[9] *Washington I*, No. 1445577, at 2, App. to Opening Br. at A21.

4

course and scope of his employment and provided workers compensation disability benefits pursuant to 19 *Del. C.* § 2324 ("Section 2324").

On December 5, 2016, Dr. Shaun Rinow released Claimant to light duty as a bus checker.[10]  Upon returning to work, Claimant alleged that his shoulder began to hurt from riding the bus.  Due to the Claimant's alleged discomfort, Dr. Rinow placed Claimant back on disability on December 7, 2016.  DTC refused to pay for a recurrence of total disability at this time, and as a result, Claimant filed his TTD Petition.

*A.  The Temporary Total Disability Proceedings*

On January 17, 2017, Claimant filed his TTD Petition to determine Additional Compensation Due.  On July 24, 2017, a hearing was held to decide whether he had suffered a recurrence of his shoulder disability from December 7, 2016 to June 23, 2017.  During the hearing, the Board considered live testimony from the Claimant and deposition testimony from both parties' experts, Dr. Rinow and Dr. Tadduni.

Claimant testified that, on December 5, 2016, he was released by Dr. Rinow for light duty, which limited him to lifting no more than 10 pounds and working four hours per day.  Upon returning to work as a bus checker, Claimant alleged that his shoulder began hurting from riding on the bus.[11]  Claimant returned to Dr. Rinow for treatment, who, again, placed him on disability until June 23, 2017.[12]

---

[10] *Id.*

[11] *Id.*  Claimant described the difference in his shoulder as "more soreness and tenderness and less movement."  *Id.*

[12] *Id.*

Dr. Rinow, a licensed and board certified chiropractor,[13] testified by deposition on Claimant's behalf. In August of 2016, Dr. Rinow began treating Claimant for shoulder symptoms related to his work incident.[14] Dr. Rinow referred Claimant to Dr. Palma for surgery in order to repair a broken screw in Claimant's left shoulder.[15] After surgery, Dr. Rinow testified that Claimant had an increase in symptoms upon returning to work in December of 2016, precluding him from returning to work before June 2017.[16] Dr. Rinow testified that Claimant was out of work for such a lengthy time because "[t]he shoulder is a complex joint. It takes a long time to rehab[ilitate]."[17]

Dr. Tadduni, a board certified orthopedic surgeon,[18] testified by deposition on DTC's behalf. Dr. Tadduni evaluated the Claimant on two occasions: first on October 13, 2016, approximately five weeks after his surgery; and again on June 22, 2017.[19] As part of these evaluations, Dr. Tadduni reviewed Claimant's medical records, diagnostic testing results, and a DART bus video depicting what had occurred on August 4, 2016.[20] Dr. Tadduni testified that at the time of the first evaluation, he was unsure of the exact

---

[13] App. to Opening Br. at A41 (Rinow Dep. at 4:5–9).

[14] *Washington I*, No. 1445577, at 5, App. to Opening Br. at A24.

[15] *Washington I*, No. 1445577, at 2, App. to Opening Br. at A21; s*ee* App. to Opening Br. at A113 (Tadduni Dep. at 7:7–9). The record does not provide Dr. Palma's full name.

[16] App. to Opening Br. at A46–A47 (Rinow Dep. at 9:11–10:17).

[17] *Id.* at A45–A46 (Rinow Dep. at 8:24–9:1).

[18] *Id.* at A109–A110 (Tadduni Dep. at 3:21–4:1). Although Dr. Tadduni is a board certified orthopedic surgeon, he is not certified under the Delaware workers' compensation guidelines. *Id.* (Tadduni Dep. at 4:13–16).

[19] *Id.* at A111, A113 (Tadduni Dep. at 5:12, 7:12–13).

[20] *Id.* at A111–A112 (Tadduni Dep. at 5:12–6:18).

procedure Claimant had undergone.[21]  However, Dr. Tadduni testified that, had he known that Claimant's surgery repaired a broken screw, he "would have said that [Claimant] was not going to need prolonged restriction and probably by the six-week point post surgery [Claimant would] be able to return to normal activity."[22]  Thus, Dr. Tadduni concluded Claimant could return to work as he was "fully recovered and [did] not need ongoing treatment at this point."[23]  Dr. Tadduni testified that Claimant was "capable of returning to work as early as December of 2016,"[24] and at the very latest, Dr. Tadduni opined that Claimant could fully return to work on June 22, 2017.[25]

The IAB denied Claimant's TTD Petition in its TTD Opinion dated August 7, 2017.[26]  The Board held that Claimant had failed to prove by a preponderance of the evidence that he had suffered a recurrence of total disability effective December 7, 2016 through June 23, 2017.[27]  In denying Claimant's TTD Petition, the Board explicitly

---

[21] *Id.* at A119 (Tadduni Dep. at 13:8–18).  *See also id.* (Tadduni Dep. at 13:1–18) ("[I]n retrospect probably if [Claimant] didn't have the broken screw he might not have had the procedure to begin with . . . . I didn't know that when I saw him, so I assumed that he needed ongoing restrictions regarding the shoulder because I didn't know exactly what had taken place and I saw him exactly five weeks I believe after the shoulder procedure.").

[22] *Id.* at A119 (Tadduni Dep. at 13:22–24).

[23] *Id.* at A129 (Tadduni Dep. at 23:3–4).

[24] *Washington I*, No. 1445577, at 10, App. to Opening Br. at A29; *see also* App. to Opening Br. at A129 (Tadduni Dep. at 23:5–23).

[25] *See Washington I*, No. 1445577, at 15, App. to Opening Br. at A34; App. to Opening Br. at A129–A130 (Tadduni Dep. at 23:24–24:3).

[26] *Washington I*, No. 1445577, at 17, App. to Opening Br. at A36.

[27] *Id.* at 12–13, App. to Opening Br. at A31–A32.  The IAB found that, "[t]here is no evidence that Claimant's physical condition with respect to his work injury has changed for the worse at any time since December 7, 2016." *Id.*

accepted Dr. Tadduni's testimony over that of Dr. Rinow's, and concluded that "Claimant was no longer totally disabled after December 5, 2016."[28]

The ten-page "Summary of the Evidence" section of the TTD Opinion contained the testimony and opinion of both experts.[29] This included Dr. Rinow's opinion that Claimant initially had an increase in symptoms upon his return to work in December of 2016, and his belief that Claimant was "fully recovered" as of June 2017.[30] This also included Dr. Tadduni's review of Claimant's history,[31] his disagreement with Claimant's prolonged restriction, and his opinion that "Claimant had fully recovered from the August 2016 work accident . . . ."[32] The Board reiterated Dr. Tadduni's opinions in the "Findings of Fact and Conclusions of Law" portion that Claimant had returned to "normal," but not the statements that Claimant had fully recovered.[33]

---

[28] *Id.* at 15, App. to Opening Br. at A34; *see id.* (stating that, "[t]he Board accepts the opinion of Dr. Tadduni over that of Dr. Rinow).

[29] *Id.* at 2–11, App. to Opening Br. at A21–A30.

[30] *Id.* at 5–6, App. to Opening Br. at A24–A25.

[31] *Id.* at 8–11, App. to Opening Br. at A27–A30.

[32] *Id.* at 11, App. to Opening Br. at A30.

[33] *Id.* at 13–15, App. to Opening Br. at A32–A34 ("The medical testimony further supports a finding that no recurrence occurred. . . . Dr. Tadduni testified that Claimant could have returned to work full-time after December 5, 2016 . . . . Dr. Tadduni [also] pointed out that Claimant's records from December 5, 2016 and December 7, 2016 . . . indicated Claimant was improving, . . . [and] [b]y the time of Claimant's June 2017 visit[] [with] Dr. Tadduni [he] concluded that Claimant's shoulder examination was normal.").

*B. The Permanent Impairment Proceedings*

On February 21, 2018, Claimant filed his PI Petition pursuant to 19 *Del .C.* § 2326 ("Section 2326").[34] Both parties retained experts in preparation for the hearing.[35] Claimant retained Dr. Peter Bandera, and DTC retained Dr. Andrew Gelman. Both experts offered deposition testimony for use at the permanency hearing.[36] Although Dr. Bandera and Dr. Gelman agreed that Claimant had some permanent impairment, they disagreed as to the extent of it.

Dr. Bandera evaluated Claimant on January 31, 2018, and found that "[h]e had pain on abduction and forward flexion at 110 degrees on the left side, which is restricted range of motion, the normal motion being approximately 180 degrees."[37] Using the Fifth Edition of the American Medical Association Guides to the Evaluation of Permanent Impairment (the "AMA Guides"),[38] Dr. Bandera assigned Claimant a 16% partial permanent impairment rating.[39]

---

[34]*Opinion*, C.A. No. N18A-12-007, at 4, App. to Opening Br. at A9.

[35] App. to Opening Br. at 3.

[36] *Id.* at A147 (Bandera Dep. at 3:9–13); *id.* at A197 (Gelman Dep. at 3:9–19).

[37] *Id.* at A147, A153 (Bandera Dep. at 3:22, 9:1–5).

[38] Dr. Bandera criticized Dr. Gelman's use of the Sixth Edition, as opposed to the Fifth Edition, which he referred to as "the more used edition." *Id.* at A177.

[39] *Id.* at A155 (Bandera Dep. at 11:20–23); *see also id.* at A156–A158 (Bandera Dep. at 12:10–14:4):

> Q. Did you arrive at a number for permanency? And how did you get to that number?
>
> A. I assigned him a 16 percent partial permanent impairment relative to the left upper extremity based on the surgical model as reviewed in Chapter 16, specifically citing, there is a page 506, Table 16-27 . . . . From the Table 16-27 he at least qualifies for, in the shoulder region, there is a breakdown of a wide total shoulder

9

Dr. Gelman evaluated Claimant on DTC's behalf on June 6, 2018.[40] As to Claimant's left shoulder motion, Dr. Gelman found that Claimant's "[f]orward flexion measured 90 degrees; abduction, 70 degrees; external rotation, 30 degrees; internal rotation, 35 degrees; extension, 30 degrees; and adduction, 30 degrees,"[41] and that, "[t]hese were all restricted relative to his right shoulder."[42] Using the Sixth Edition of the AMA Guides, Dr. Gelman assigned Claimant a 3% partial permanent impairment rating.[43]

---

procedure versus isolated surgery to the clavicle region, so he clearly qualifies for a more comprehensive shoulder operation within a range of 24 to 30 percent. I gave him a lower level which is 24 percent. And I believe there is some discrepancy and actually has a typo in the Table 16-27. But I believe he qualifies for the lower end of that range, 24 percent. And then we add the restriction, range of motion, and he has pain and dysfunction on abduction, forward flexion at 110 degrees. The deficit in abduction would qualify him for 3 percent impairment, and the deficit in flexion, which is moving the arm forward, qualifies him for 5 degrees based on the pie charts of the upper extremity on page 476 and 477. So in summary, he received 24 percent impairment for this very extensive surgery to his left shoulder, and he received an 8 percent total impairment with restriction to range of motion. That combination would essentially be 32 percent. And I downgraded him to a 16 percent based on my clinical experience.

[40] *Id.* at A198 (Gelman Dep. at 4:6–18).

[41] *Id.* at A201 (Gelman Dep. at 7:11–14).

[42] *Id.* at A201 (Gelman Dep. at 7:15).

[43] *Id.* at A208–A209 (Gelman Dep. at 14:7–15:2).

Q. Doctor, you evaluated the Claimant using the Fifth Edition and the Sixth Edition of the AMA Guidelines. Can you discuss your findings on permanent impairment with regard to the Claimant's left shoulder under the Fifth Edition?

A. So to answer that question I did look at the Fifth Edition and I felt that that would be applicable with regards to the records that I had reviewed dating back to the summer of 2017 at which time Mr. Washington was released. I specifically outlined the methodology that I applied with regards to the Sixth Edition, feeling that a more precise diagnosis is referenced and applicable towards [Claimant] . . . . And with that said, and citing the Sixth Edition, that is specifically addressed in the Sixth Edition in Tables 15-5, Page 404. So I took that where [Claimant] falls into a Class I category which identifies, quote, "Residual symptoms consistent with objective findings and/or functional loss with normal motion," unquote. That's his residual. That's with what others recorded as the motion measurements back in the

10

On November 27, 2018, the Board held Claimant's PI hearing. At the beginning of the hearing, DTC moved for dismissal, arguing that the Board had already concluded in its TTD Opinion that Claimant's shoulder had returned to normal and that he had "fully recovered." Without considering the deposition testimony from either Dr. Bandera or Dr. Gelman, the Board granted DTC's motion to dismiss.[44] On November 28, 2018, the Board issued the Order dismissing Claimant's PI Petition.[45] The Order stated that the Board had previously accepted Dr. Tadduni's testimony over that of Dr. Rinow, and that it had found previously that Claimant had "fully recovered."[46]

### C. The Superior Court Appeal

On December 19, 2018, Claimant appealed the Board's Order to the Superior Court, arguing that his PI Petition had been dismissed improperly. He argued that the Board lacked substantial evidence to dismiss his PI Petition because the Board failed to examine any evidence relating to his left shoulder permanency. DTC countered that the Board did not commit an error when it had determined Claimant's injury was fully resolved because the Board was free to reasonably interpret its prior ruling.

---

summer of 2017, and that default equates to a 3 percent rating. Applying the Adjustment Grid Parameters as I appreciated them and as others recorded [for Claimant] back in the Summer of 2017, there would be no net adjustment and thus I concluded a 3 percent left shoulder rating attributable to that which occurred in 2016.

*Id.* at A207–A209 (Gelman Dep. at 13:14–15:2).

[44] The deposition testimony of Dr. Bandera and Dr. Gelman was not admitted into evidence; however, it was submitted as part of the record in this appeal.

[45] *Washington II*, No. 1445577, App. to Opening Br. at A18.

[46] *Id.*

11

The Superior Court affirmed the Board's decision, finding that the Board's interpretation of its previous decision was reasonable and supported by substantial evidence.[47] The court focused on Dr. Tadduni's "fully recovered" statement, as well as his testimony that Claimant's shoulder had "returned to normal." In addition, the court recognized that the "fully recovered" language was not in the "Findings of Fact and Conclusions of Law" section of the TTD Opinion. Nevertheless, it concluded that the Board had the authority to interpret the findings and conclusions in the TTD Opinion so long as the interpretation was reasonable.[48] The court then reasoned that substantial evidence supported affirming the Order because the Board could deduce from those statements that there was no loss of use in his shoulder, and, thus, there was no permanent impairment.[49] It also noted Claimant's expert's testimony that Claimant was "'100%' by June 23[,] 2017" supported its holding.[50]

This appeal followed. The question Claimant presents is whether the IAB properly relied upon the expert medical testimony, presented in the context of a TTD Petition, as a basis to dismiss Claimant's PI Petition. DTC argues that the Superior Court did not err in affirming the Order, and further contends that the decision should be affirmed based upon "law of the case" and *res judicata* grounds. Although this is a close case because of the deferential standard of review, we conclude that the Board erred in dismissing the PI

---

[47] *Opinion*, C.A. No. N18A-12-007, at 11–12, App. to Opening Br. at A16–A17.

[48] *Id.* at 8, App. to Opening Br. at A13; *see also id.* at 10 n.24, App. to Opening Br. at A15.

[49] *Id.* at 10–11, App. to Opening Br. at A15–A16.

[50] *Id.* at 11, App. to Opening Br. at A16 (quoting App. to Opening Br. at A47 (Rinow Dep. at 10:1–3)).

Petition solely on the basis of the testimony provided for the TTD Petition. We believe that Claimant should have had an opportunity to present his evidence in the PI Petition hearing. Accordingly, we reverse and remand for further proceedings.

## II.    Standard Of Review

"The review of an Industrial Accident Board's decision is limited to an examination of the record for errors of law and a determination of whether substantial evidence exists to support the Board's findings of fact and conclusions of law."[51] "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[52] "It is 'more than a scintilla but less than a preponderance of the evidence.'"[53] "On appeal, this Court will not weigh the evidence, determine questions of credibility, or make its own factual findings."[54]

## III.    Analysis

### A.  The Board Erred in Dismissing the Claimant's PI Petition.

We agree with Claimant that the Superior Court erred in affirming the Order because there was no permanent impairment evidence presented to the Board prior to the dismissal of his PI Petition, and thus, the Board's decision to deny that petition was unsupported. As

---

[51] *Powell v. OTAC, Inc.*, 2019 WL 6521980, at *4 (Del. Dec. 4, 2019) (quoting *Roos Foods v. Guardado*, 152 A.3d 114, 118 (Del. 2016)).

[52] *Id.*

[53] *Id.* (quoting *Noel-Liszkiewicz v. La-Z-Boy*, 68 A.3d 188, 191 (Del. 2013)).

[54] *Id.* (quoting *Person-Gaines v. Pepco Hldgs., Inc.*, 981 A.2d 1159, 1161 (Del. 2009)) (internal quotation marks omitted).

the TTD Petition and PI Petition address different issues, the Board erred in relying on testimony from the TTD Petition as the sole basis for dismissing the PI Petition.

In its Order dismissing the PI Petition, the Board stated in the recitals:

WHEREAS, after a prior Hearing in this case on July 24, 2017, the Board issued a decision dated August 7, 2017 in which it accepted Dr. Tadduni's testimony that the claimant had a normal left shoulder on examination and that the claimant had "fully recovered" from the August 4, 2016 work accident . . . .[55]

The Superior Court affirmed the Board's decision, finding that the Board had reasonably interpreted the TTD Opinion. The court found that substantial evidence supported affirming the Order, because the Board could deduce from those statements that there was no loss of use in his shoulder, and thus there was no permanent impairment. To support its conclusion, the court also referred to Dr. Rinow's statement that Claimant "was '100%' by June 23[,] 2017."[56]

As an initial matter, we are not troubled that Dr. Tadduni's testimony that Claimant "fully recovered" is not contained in the "Findings of Fact and Conclusions of Law" section of the TTD Opinion.[57] It is within the Board's discretion to interpret its own rules and orders so long as the interpretation is reasonable.[58] "[A]lthough the reasoning of the Board must be apparent, 'where the testimony has been explained as part of the preface to the

---

[55] *Washington II*, No. 1445577, App. to Opening Br. at A18.

[56] *Opinion*, C.A. No. N18A-12-007, at 11, App. to Opening Br. at A16 (quoting App. to Opening Br. at A47 (Rinow Dep. 10:1–3)).

[57] The Board used similar terminology and found that Claimant's shoulder was "normal" and "returned to normal" based on Dr. Tadduni's testimony. *Washington I*, No. 1445577, at 15, App. to Opening Br. at A34.

[58] *Goldsborough v. New Castle Cnty.*, 2011 WL 51736, at *6 (Del. Super. Jan. 5, 2011).

findings of fact and law and where the Board's decision contains the appropriate details which led to its reasoning, this Court will not reverse simply because the Board did not repeat those facts in its "Findings.""[59] Thus, the Board could look to the "fully recovered" language and any other language in the decision to support its reasoning that Claimant did not suffer from a permanent impairment.

However, we hold that it was error for the Board and the Superior Court to rule that Claimant did not suffer from a permanent impairment based on the "fully recovered" language in the TTD Opinion. Claims for compensation asserted in a TTD Petition and a PI Petition differ in an important way. We have previously observed that, "[w]hether an industrial accident caused temporary total disability or permanent partial disability are two totally distinct questions."[60] When a claimant petitions the Board for permanent impairment compensation under Section 2326, "he or she has the burden of proving the percentage of permanent impairment."[61] On the other hand, when a claimant petitions for

---

[59] *Johnson v. E.I. Dupont de Nemours & Co.*, 2000 WL 33115805, at *3 (Del. Super. Oct. 4, 2000), *aff'd*, 768 A.2d 469 (Del. 2001) (quoting *Justison v. Home Health Corp.*, 1999 WL 463702, at *4 (Del. Super. May 19, 1999)).

[60] *Betts v. Townsends, Inc.*, 765 A.2d 531, 535 (Del. 2000). Compensation for permanent injuries under Section 2326 pertains to the compensation paid to a claimant for permanent physical impairment, "regardless of earning power after the injury." 19 *Del. C.* § 2326(a).

[61] *Griffith v. Wachovia Corp.*, 2006 WL 1149162, at *3 (Del. Super. Mar. 9, 2006), *aff'd*, 907 A.2d 145 (Del. 2006); *see also Jennings v. Avon Prods.*, 2013 WL 183738, at *2 (Del. Super. Jan. 4, 2013) ("When determining whether an employee has been permanently impaired, the IAB must decide whether the employee suffered a permanent loss of use of a member or part of his body and whether such loss of use was caused by a work accident."). Further, "[t]he IAB must determine loss of use based upon the employee's ability to use that body part; loss of use represents that degree of normal use which is beyond the employee's ability or capability." *Id.*

total disability compensation under Section 2324, the question is whether the claimant was disabled from working for a period of time.[62]

The question before the Board in the TTD Petition was whether Claimant had suffered a recurrence of a total disability, and the experts testified in terms of whether Claimant was able to return to work. Although there was some testimony that Claimant's shoulder injury was "fully recovered" and back to "normal" in the TTD hearing, that testimony related to whether there had been a recurrence of total disability and whether Claimant could return to work. The nature of the inquiry in the TTD hearing was not whether, and to what degree, Claimant may have suffered from a permanent impairment.

DTC argues that the IAB is free to choose between conflicting medical opinions, and it is the Board's function to resolve conflicts in medical testimony. The problem with DTC's argument is that the Board never considered the expert testimony regarding the degree of Claimant's permanent impairment from the experts. Instead, it dismissed the PI

---

[62] *See Griffith*, 2006 WL 1149162, at *3 ("[W]here the employee claims she is entitled to benefits *for periods* of total disability via § 2324, she is charged with proving that claim to the Board's satisfaction." (emphasis added)); *McMillan v. General Motors Corp.*, 1972 WL 122760, at *2 (Del. Super. Nov. 8, 1972) (remanding the case to determine if total disability benefits should be awarded or denied over the period from 1966 to 1970). *See also Huda v. Continental Can Co.*, 265 A.2d 34, 36 (Del. 1970) ("It is now well established in this State that the degree of compensable disability in a workmen's compensation case depends upon the degree of impairment of earning capacity; that an employee may be totally disabled economically, and within the meaning of the Workmen's Compensation Law, although only partially disabled physically." (citing *Ham v. Chrysler Corp.*, 231 A.2d 258, 261 (Del. 1967))); *Bigelow v. Sears, Roebuck & Co*, 260 A.2d 906, 907 (Del. 1969) (holding that, total disability may be found "if the claimant's physical condition is such as to disqualify her from regular employment commensurate with her qualifications and training" (citing *M/A. Hartnett, Inc. v. Coleman*, 226 A.2d 910 (Del. 1967))); *Ernest DiSabatino & Sons, Inc. v. Apostolico*, 269 A.2d 552, 553 (*Del.* 1970) (explaining that, Section 2324 is "designed to reimburse an employee, at least in part, for loss of earnings," whereas under Section 2326, regardless of earning power, the employee is to be paid for bodily injury.).

Petition at the outset.[63]  Thus, under these circumstances, we agree with the Claimant that there is a lack of substantial evidence in the record to support a finding that Claimant does not suffer from a permanent impairment.

>   B.  *Neither the Law of the Case Doctrine nor Res Judicata Bars Claimant's Petition for Permanent Impairment.*

DTC argues both the law of the case doctrine and *res judicata* bar Claimant's PI Petition.  We disagree.  The law of the case "is established when a specific legal principle is applied to an issue presented by facts which remain constant throughout the subsequent course of the same litigation."[64]  It is a "self-imposed restriction that prohibits courts from revisiting issues previously decided, with the intent to promote 'efficiency, finality, stability and respect for the judicial system.'"[65]  The doctrine "presumes a hearing on the merits and only applies to issues the court actually decided."[66]

Similarly, *res judicata* applies if "1) the court making the prior adjudication had jurisdiction, 2) the parties in the present action are either the same parties or in privity with the parties from the prior adjudication, 3) the cause of action [is] the same in both cases or

---

[63] DTC argues that following the IAB's dismissal of the PI Petition, the record was closed and that, "Washington cannot rely on their testimony as a basis for his appeal."  Answering Br. at 18. Although we quote above some of the expert testimony taken in anticipation of the permanent impairment hearing, we give no specific weight to it as it was not considered in the proceedings below.  We merely hold here that the PI Petition was dismissed prematurely, and that Claimant should be able to introduce his evidence of permanent impairment.

[64] *Kenton v. Kenton*, 571 A.2d 778, 784 (Del. 1990).

[65] *State v. Wright*, 131 A.3d 310, 321 (Del. 2016) (quoting *Cede & Co. v. Technicolor, Inc.*, 884 A.2d 26, 39 (Del. 2005)).

[66] *Id.* (citations and internal quotation marks omitted).  *See id.* (noting also that "[c]ourts usually require the issue to have been 'fully briefed and squarely decided' in the prior proceedings" (quoting *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997))).

the issues decided in the prior action [are] the same as those raised in the present case, 4) the issues in the prior action [were] decided adversely to the plaintiff's contentions in the instant case, and 5) the prior adjudication [was] final."[67]

In order for either to apply, the previously resolved issue must be the same. However, as explained above, Claimant's claim for temporary total disability and his claim for permanent impairment required examining different, albeit related, issues. Although both parties retained experts in connection with the permanent impairment hearing, both experts were deposed, and both testified that there was at least some measure of permanent impairment, the Board never heard any evidence on the issue of permanent impairment. Accordingly, the law of the case doctrine and *res judicata* do not apply here.

## IV. Conclusion

For the foregoing reasons, we **REVERSE** the decision below and **REMAND** this matter to the Superior Court for further proceedings consistent with this opinion.

---

[67] *Chavez v. David's Bridal*, 979 A.2d 1129, 1134 (Del. Super. 2008), *aff'd*, 950 A.2d 658 (Del. 2008); *see also Betts*, 765 A.2d at 535 (holding that *res judicata* was inapplicable to a claimant's permanent partial disability claim in connection with a knee injury where the IAB previously made a determination on his temporary total disability claim for the knee injury, "[b]ecause the Board was confronted with a different claim at each hearing.").