# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| Leon Smith, | : | C.A. No. S25A-08-002 CAK |
| | : | |
| Claimant Below- | : | |
| Appellant, | : | |
| | : | |
| v. | : | |
| | : | |
| Allen Foods, | : | |
| | : | |
| Employer Below- | : | |
| Appellee. | : | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Submitted: February 3, 2026
Decided: February 11, 2026

Walt F. Schmittinger, Esquire, and Liam N. Gallagher, Esquire, Schmittinger and Rodriguez, P.A., 414 South State Street, P.O. Box 497, Dover, Delaware 19903, Counsel for Appellant.

Vance E. Davis, Jr., Esquire, Elzufon, Austin & Mondell, P.A., 300 Delaware Avenue, 17th Floor, P.O. Box 1630, Wilmington, Delaware 19899-1630, Counsel or Appellee.

**KARSNITZ, J.**

Our worker's compensation law has a central principle called the displaced worker doctrine. It is simple in articulation, but much more difficult in application. A displaced worker is one who "…is so handicapped by a compensable injury that he will no longer be employed regularly in any well-known branch of the competitive labor market and will require a specially – created job if he is to be steadily employed."[1] A displaced worker may be totally disabled economically despite being only partially disabled medically,[2] and in applying the doctrine one must necessarily address if jobs are realistically within reach of the disabled person.[3]

The displaced worker doctrine is central to a determination of the issue of the right to receive total disability benefits pursuant to Delaware Workers' Compensation law. A worker totally disabled because of a work-related injury is generally entitled to receive two thirds of his or her average weekly wage up to a statutory limit and has no time limit on the receipt of disability benefits. By contrast, our law governing partial disability, when a worker can work in some capacity but still has some wage loss, limits partial disability payments to a total of 300 weeks.

In a typical case of a significant work injury, the worker will be totally disabled for some period of time, and the employer will pay the worker total

---

[1] *Ham v. Chrysler Corp.*, 231 A.2d 258, 261 (Del. 1967).
[2] *Governor Bacon Health Center v. Noll*, 315 A.2d 601 (Del. Super. 1974).
[3] *Abex Corp. v. Brinkley* 252 A.2d 552 (Del. Super. 1969).

disability payments. As time progresses, and after appropriate medical treatment, the employee often reaches a medical plateau. Those administering the claim will ask doctors if the injured worker can work and if so, in what capacity. Litigation often ensues over rights to continuing total disability, partial disability, or no disability. This case is an example of litigation of this sort.

Here the sole issue is whether Claimant-Appellant, Leon Smith, is a displaced worker. If he is, he remains entitled to (unlimited in time) total disability payments. If not, he is entitled to partial disability, which in his case equals the total disability amount. The rub lies in the temporal limitation, as well as other potential effects of the Industrial Accident Board's (the "Board's") finding that Claimant is not a *prima facie* displaced worker.

The displaced worker analysis requires a review of an injured employers "…physical impairment, coupled with other factors such as the injured employee's mental capacity, education, training or age …"[4] Our Supreme Court, in *Ham v. Chrysler Corp.*,[5] described the relevant considerations as follows:

> … not only the medical and physical facts, but also such factors as the employee's age, education, general background, occupational and general experience, emotional stability, the nature of the work performable under the physical impairment, and the availability of

---

[4] *Franklin Fabricators v. Irwin*, 306 A.2d 734, 737 (Del. 1973).
[5] 2321 A.2d at 261.

such work. Claimant has the burden to show he is *prima facie* displaced.

If the Board determines a Claimant is *prima facie* displaced, the burden of proof is then on the employer to establish there is work available within the Claimant's medical restrictions.[6]

Having set forth the framework for the worker's compensation disability analysis, I turn to this case. Leon Smith sustained a compensable workplace injury on October 10, 2024. At the time, Allen Foods employed him as a forklift driver and had for 10 years. Mr. Smith operated a forklift which overturned in a forward direction. The forklift had no seatbelt, and in the accident, Mr. Smith fell forward into the forklift cage. He suffered a concussion, and post-concussion symptoms, including effects to his focus, memory and mood. He also suffered neck pain radiating to his upper extremities, and back pain radiating to his lower extremities.

Mr. Smith received appropriate treatment, including emergency care and follow up care with his primary care provider. He also had orthopedic and neurology consultations. In November 2024, Mr. Smith began treatment with Dr. Sampathkumar, who is board certified in brain surgery as well as physical medicine and rehabilitation. Dr. Sampathkumar maintained Mr. Smith on "no work" status

---

[6] *Irwin*, s*upra,* at 737.

until April 4, 2025, when he released him to part-time (4 hour/day, 5 day per week) sedentary work. He included requirements that Mr. Smith be allowed increased time to complete tasks and rest breaks as needed. Dr. Sampathkumar did not release Mr. Smith to his old job or anything similar. Dr. Sampathkumar continues to treat Mr. Smith to manage his symptoms.

Dr. Sampathkumar also referred Mr. Smith to Dr. Natasha Brown for neuropsychologic treating. Dr. Brown conducted a battery of tests over half a day. Dr. Brown noted Mr. Smith had difficulty with some of the tests, as he was unable to finish portions in the allotted time. She confirmed many of Dr. Sampathkumar's findings including neck and back pain, balance and mobility issues, poor memory, and difficulty with concentration, and depression. Dr. Brown assessed the problems as part of his post-concussion symptoms. She recommended cognitive behavior therapy.

Dr. Eric Schwartz, a board-certified orthopedic surgeon, examined Mr. Smith at the request of the employer. He opined that Mr. Smith could only perform sedentary work. He limited his opinion to orthopedic issues.

The medical opinions offered were relatively consistent and non-controversial. The Board found Dr. Sampathkumar credible and adopted his views.

## PROCEDURAL POSTURE

The Board by decision dated August 6, 2025, addressed the employer's petition to terminate Mr. Smith's total disability benefits. It found that he was no longer entitled to total disability lost wages, as he had been cleared for part-time sedentary work. The Board found he was entitled to ongoing temporary partial disability benefits. It also determined he was not a displaced worker.

Claimant appealed the decision. Briefing is complete and I held oral argument on February 3, 2026.

## STANDARD OF REVIEW

I am tasked with determining if substantial evidence exists to support the Board's findings, and if they are free from legal error. The appeal is on the record made before the Board.[7] I must give deference to the Board's findings of fact.[8]

## ANALYSIS

The only issue before me is Mr. Smith's claim the Board erred in determining he was not a *prima facia* displaced worker. The Board's reasoning was sparse, and consisted of the following:

> Given Claimant's age, physical limitations, education, mental capacity and training, the Board finds that he

---

[7] 29 *Del. C.* §10142.
[8] *Johnson v Chrysler Corp.*, 213 A. 64 (Del. 1965)

6

is not *prima facia* a displaced worker (citation omitted). Although Claimant is 79 years old, he was working full-time in in a physically demanding job as a forklift operator less than a year ago, so his age does not seem to be an impediment to employment. Claimant completed 10th grade, has no language barrier, drives a car, functions as an adult in today's society, and has a delightful personality. Claimant has not persuaded the Board that he is a displaced worker who is so handicapped that he cannot be employed in the regular labor market and requires a specially created job in order to be employed (citation omitted).[9]

Because they found him not to be a displaced worker, the Board moved on to determine if he had made reasonable efforts to find a job but was unable to do so because of his disability.[10] Claimant made no effort, so the Board found he was not a displaced worker on that basis.[11]

Mr. Smith's unrebutted testimony was that he was 79 years old with a 10th grade education. He has worked many years as a forklift operator, the last 10 years for Allen Foods. He has difficulty turning his head, has difficulty standing for long periods, and relies on his family for transportation. I have already detailed his doctor's findings, above.

---

[9] Board decision, p.14.
[10] See *M.A. Hartnett v. Coleman*, 226 A.2d 910, 913 (Del. 1967).
[11] Employer had a labor market expert and survey that the Board excluded for failure to disclose it in a timely manner.

For me, Mr. Smith is a classic displaced worker. I will address the Board's findings *seriatim*:

1. Although Claimant is 79 years old, he was working full-time in a physically demanding job less than a year ago, so his age does not seem to be an impediment to employment.

This finding is either irrelevant, a *non sequitur,* or both. The important part of the statement is he is 79 years old. It is an axiom that Father Time is undefeated. The Board does not explain how the fact that Mr. Smith held a physically demanding job before his injury effects his post injury abilities. It is commendable Mr. Smith worked at a physically taxing job to age 79, but that tells us nothing about his current abilities. In addition, the Board never addresses the age issue other than to state his age. He has both significant physical and cognitive disabilities which clearly and obviously effect his employability. At oral argument, I asked employer's counsel about the disabilities, and how they would affect employability. The answer was an employer could allow breaks or help from another employer. For me this is exactly the type of "specially created" job described in *Ham v. Chrysler Corp.[12]*

2. Claimant completed the 10th grade.

The Board does not tell me if this is a positive finding in favor of employability, or a negative against it. I have no way to analyze its decision. Many

---

[12] 231 A.2d at 261.

of the cases applying the displaced worker doctrine involve people with even less formal education. But in this world, the lack of a high school degree is a significant fact favoring a finding of being displaced.

3.   He drives a car.

This finding provides some small support for the Board's decision. But it also ignores the testimony that he relies upon family for most of his transportation.

4.   He functions as an adult in today's society.

This is so general as to be of no use. There is no standard applied. This is the same language criticized in in *Yoder v. Twin River Management Group, Inc.*[13]

5. He has a delightful personality.

I have no doubt this assessment is correct, but it does not help me in answering if he is employable.

Mr. Smith has significant physical limitations involving his neck and back. The doctors agree he cannot do his old job and is limited to sedentary work. He has significant, well-documented cognitive dysfunction for which he is still treating. He is 79 years old with a 10th grade education. He has done nothing in his employment history but heavy labor.

---

[13] 2025 WL 2207447 (Del. Super. Aug. 4, 2025).

The record is free of any discussion of Mr. Smith's computer proficiency or even the use of a smart phone.

It is not clear to me why the Board made the decision it did. The Board's explanation is jejune and full of platitudes masquerading as evidence-based reasons. The Board's decision is not grounded in substantial evidence, nor an application of the appropriate law. I am reversing the Board's decision. Relying upon *Adams v. Shore Disposal, Inc.,*[14] I am not remanding the case. Of course, this is without prejudice to the employer's right to file another Petition to Terminate.

**IT IS SO ORDERED**

/s/Craig A. Karsnitz
Craig A. Karsnitz


cc: Prothonotary

---

[14] 720 A.2d 272, 273-274 (Del. 1998).