IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IDA WARREN,

    Claimant/Appellant,

    v.

AMSTEAD INDUSTRIES, INC.

    Employer/Appellee.

: C.A. No.   S19A-09-001 CAK

Submitted: July 9, 2020
Decided: August 10, 2020

***Upon Claimant's Appeal from the Decision of the Industrial Accident Board
after Remand***

**DENIED**

**<u>MEMORANDUM OPINION AND ORDER</u>**

Adam F. Wasserman, Esquire, Ciconte Serba LLC, 1300 King Street, Wilmington, Delaware 19801, Attorney for Claimant/Appellant.

Linda L. Wilson, Esquire, Marshall Dennehey Warner Coleman & Goggin, 1007 North Orange Street, 6th Floor, Wilmington, Delaware 19899, Attorney for Employer/Appellee.

KARSNITZ, J.

## FACTS

The parties agree as to the relevant facts. Appellant, Ida Warren ("Warren" or "Claimant"), suffered work-related repetitive use injuries to both her upper extremities and shoulders while working as a fan wheel assembler for Appellee, Amstead Industries, Inc. ("Employer"), with an onset date of October 22, 2010. She was 60 years old at the time of her injury. On October 30, 2010, she began receiving temporary total disability ("TTD") benefits provided pursuant to 19 *Del. C.* Chapter 23 (Workers' Compensation) under an Agreement as to Compensation with Employer (the "Agreement").[1] She was paid TTD benefits until August 16, 2019, the date of Board Decision Two (as defined below). In the period between 2010 and 2019, three petitions to terminate her TTD benefits were filed by Employer, in 2011, 2013 and 2015, as discussed further below. This appeal originates from Employer's fourth petition to terminate her TTD benefits, filed in 2017.

## PROCEDURAL HISTORY

In 2011, Employer filed its first petition for review with the Delaware Industrial Accident Board (the "Board") to terminate Claimant's TTD benefits. In 2012, the Board denied Employer's petition as premature given Claimant's

1

pending treatment for her left shoulder, saying that "Amstead only recently accepted the shoulder injury as being compensable, so Claimant is now able to undergo the necessary treatment for her shoulder."

Claimant had time to treat for her shoulder, and on April 9, 2012 had a left carpal tunnel release procedure. On September 4, 2013, Employer filed its second petition for review. The 2013 petition was scheduled for a January 10, 2014 hearing, but that hearing was continued due to medical issues of Claimant's then counsel until March 20, 2014. The 2013 petition did not proceed to a hearing because, two days prior to the March 20, 2014 hearing date, Claimant's counsel advised Employer's counsel that Claimant was interested in possibly commuting her case. Because this did not constitute a reason for a continuance under the Board's rules, the parties stipulated to a resolution whereby they entered into a new Agreement and the 2013 petition could be refiled, in order to give the parties time to try to reach an agreement as to commutation of her benefits.

A commutation agreement was not reached, so Employer filed its third petition for review in 2015. The hearing on that petition was initially delayed due to the inability of the parties to find a mutually agreeable date for the deposition of Employer's medical expert; it was delayed a second time due to another medical

---

[1] 19 *Del. C.* §2344.

2

issue of Claimant's counsel; and it was delayed a third time due to the sudden cancellation by Employer's medical expert of his September 16, 2015 deposition and the inability to reschedule that deposition prior to the October 2, 2015 hearing date. Employer then withdrew its third petition.

In October 2017, Employer filed its fourth petition for review to terminate Claimant's TTD benefits. The hearing took place in two parts: the first part on February 2, 2018 and the second part on June 8, 2018. On July 23, 2018, the Board granted Employer's petition and terminated Claimant's TTD benefits on the basis that she had voluntarily retired.[2]

This is my third ruling in this case. First, Claimant appealed to this Court from Board Decision One, arguing, *inter alia*, that the Board committed legal error by considering the issue of whether Claimant had retired and removed herself from the work marketplace. On April 23, 2019, I held that Claimant had not received notice with respect to the retirement issue, which resulted in both parties having an inadequate opportunity to fully develop the record and argue the retirement issue.[3] I remanded the case to the Board for a full hearing on *all*

---

[2] *Warren v. Amstead Industries, Inc.*, I.A.B. No. 1360974 (July 23, 2018) ("Board Decision One").

[3] *Warren v. Amstead Industries, Inc.*, 2019 WL 1780799 (Del. Super. April 23, 2019).

issues.[4]

Second, on June 4, 2019, and as required by my April 23, 2019 decision, I awarded Claimant attorney's fees and costs under 19 *Del. C.* §2350(f).[5]

In July 2019, the Board held the hearing on remand. At the hearing, and contrary to my order for a full hearing on *all* issues, the Board refused to allow evidence obtained by Claimant after February 2, 2018 (the first day of the hearing on the fourth petition) unless it pertained to clarification of the retirement issue. Employer called no witnesses. Claimant called Claimant and Dr. Richard DuShuttle, a medical doctor and Claimant's treating physician. On August 16, 2019, the Board entered a decision again terminating Claimant's TTD benefits on the same basis as before, that she had voluntarily retired.[6]

On September 16, 2019, Claimant filed her Notice of Appeal of Board Decision Two with this Court. Personal exigencies and the COVID-19 pandemic slowed the course of the case. The parties have now fully briefed the appeal and oral argument was held on July 9, 2020.

---

[4] *Id.*

[5] *Warren v. Amstead Industries, Inc.*, 2019 WL 2374047 (Del. Super. June 4, 2019).

[6] *Warren v. Amstead Industries, Inc.*, I.A.B. No. 1360974 (August 16, 2019) ("Board Decision Two").

4

## QUESTIONS PRESENTED

(1) Whether the Board improperly failed to address Claimant's TTD status or, alternatively, improperly and implicitly denied Claimant's TTD status.

(2) Whether the Board improperly denied Claimant's Displaced Worker status.

(3) Whether the Board improperly found that Claimant retired and voluntarily removed herself from the labor market.

(4) As an overarching question in connection with the foregoing three questions, but not separately addressed by Claimant, whether the Board improperly excluded certain evidence but then relied on some of that evidence in reaching its decision.

## STANDARD AND SCOPE OF REVIEW

The standard and scope of my review of decisions of the Board on appeal is well-trodden ground. I review the record to determine whether substantial evidence exists to support the Board's findings of fact and I review the Board's decision for errors of law.[7]

I give factual decisions of the Board substantial deference and will reverse only if they are not supported by substantial evidence.[8] Substantial evidence

---

[7] *Arrants v. Home Depot*, 65 A.3d 601 (Del. 2013).
[8] *Person-Gaines v. Pepco Holdings, Inc.*, 2009 WL 1910950 (Del. Super. Ct. April 23, 2009), *aff'd Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159 (Del. 2009) ("The duty of this Court

5

means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[9] It falls somewhere between a scintilla and a preponderance of the evidence.[10] I "must consider the record in the light most favorable to the party prevailing below, resolving all doubts in its favor."[11] Deference must be given to the Board's factual findings.[12] I "[do] not sit as the trier of fact, rehear the case, reweigh the evidence, make credibility determinations, or substitute [my] own judgment for that of the Board."[13]

I provide plenary review of legal issues.[14] Alleged errors of law are reviewed de novo.[15] Absent an error of law, appellate review for a Board decision

---

on an appeal from the Board is to determine whether the decision below is supported by substantial evidence ...Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The standard of review requires the reviewing court to search the entire record to determine whether, on the basis of all of the testimony and exhibits before the agency, it could fairly and reasonably reach the conclusion that it did. It is within the province of the Board to determine the credibility of witnesses and the factual inferences that are made from those determinations. Only where there is no substantial, competent evidence to support the Board's factual findings may this Court overturn the Board's decision.") *See also General Motors Corp. v. Jarrel*, 493 A.2d 978 at 980 (Del. Super 1985); *Histed v. E.I. DuPont de Nemours & Co.*, 621 A.2d 340 at 342 (Del. 1993); *Nat'l Cash Register v. Riner*, 424 A.2d 669 at 674-75 (Del. Super. 1980); *Standard Distributing, Inc. v. Hall*, 897 A.2d 155 at 158 (Del. 2006); *Johnson v Chrysler Corp.*, 213 A.2d 64 at 67 (Del. 1965).
[9] *Olney v. Cooch*, 425 A.2d 610 at 614 (Del. 1981) (quoting *Consolo v. Federal Maritime Com.*, 383 U.S. 607 (1966)).
[10] *Id.* (citing *Cross v. Califano*, D. Fla., 475 F. Supp. 896 at 898 (1979)).
[11] *Steppi v. Conti Elec., Inc.*, 991 A.2d 19 (Del. 2009).
[12] *State v. Cephas, 637 A.2d 20 (Del. 1994). 29 Del. C. § 10142 (d).*
[13] *LeVan v. Independence Mall, Inc.*, 940 A.2d 929 at 932 (Del. 2007).
[14] *Id.*; *Stanley v. Kraft Foods, Inc.* 2008 WL 2410212 at *2 (Del. Super. Mar. 24, 2008) (citing *Histed, supra*, at 342).
[15] *Id.*

is abuse of discretion.[16] "Judicial discretion is the exercise of judgment directed by conscience and reason, and when a court has not exceeded the bounds of reason in view of the circumstances and has not so ignored recognized rules of law or practice so as to produce injustice, its legal discretion has not been abused."[17] The Board has abused its discretion only if it exceeds the bounds of reason given the circumstances.[18] "Only when there is no satisfactory proof in support of a factual finding of the Board may the Superior Court . . . overturn it."[19] If error or abuse of discretion is found, I must determine whether the mistake constituted significant prejudice so as to have denied the appellant a fair hearing.[20]

## ANALYSIS

**Total Disability**

As Claimant points out, the Board used a hopscotch, circuitous route to reach its decision on TTD. It did not begin with the issue of Claimant's TTD or, for that matter, Claimant's partial disability. Rather, it jumped directly to the retirement issue (see discussion, below). Only then did it turn back to the issue of TTD.

---

[16] *Arrants v. Home Depot, supra.*
[17] *Firestone Tire & Rubber Co. v. Adams,* 541 A.2d 567 at 570 (Del. 1988).
[18] *Person-Gaines v. Pepco Holdings, Inc., supra.*
[19] *Johnson v. Chrysler Corp., supra* (citing *Children's Bureau of Delaware v. Nissen,* 29 A.2d 603 (Super. Ct. Dec. 30, 1942)).
[20] *Strauss v. Biggs,* 525 A.2d 992 at 997 (Del. 1987).

7

Claimant argues that Employer failed to initially show that Claimant is not completely disabled,[21] failed to terminate an award of compensation upon a review of the award of compensation,[22] failed to make a determination on the issue of partial disability,[23] and erroneously held that Claimant was required but failed to look for work.[24] She points to her Agreement with Employer, Dr. DuShuttle's 2014, 2018 and 2019 testimony and Dr. Jeffrey Meyers' 2015 testimony[25] that she was totally disabled. Claimant argues that the Board retroactively terminated her TTD status: it improperly looked back seven years and summarily concluded that, since Claimant has been on light duty since 2012, she is not totally disabled, even though Employers' fourth petition to terminate TTD was not filed until 2017. Claimant essentially raises a promissory estoppel argument: Employer is estopped from denying her TTD status because she relied

---

[21] *Roos Foods v. Guardado,* 152 A.3d 114 at 117 (Del. 2016).

[22] *Clements v. Diamond State Port Corp.,* 831 A.2d 870 at 879 (Del. 2003) (quoting 19 *Del. C.* §2347.

[23] *Mladenovich v. Chrysler Grp., L.L.C.,* 2011 WL 379196 (Del. Super. Jan. 31, 2011).

[24] *Clements,* 831 A.2d at 879 ("The Claimant's general right to rely upon his treating physician's total disability opinion, especially while a Board award or agreement is in effect means that the Claimant ha[s] no obligation to either return to work or to look for other employment until the Board makes that determination;" *Gilliard-Belfast v. Wendy's, Inc.,* 754 A.2d 251 at 253-54 (Del. 2000) (same). Employer counters that this factor is inapplicable to a TTD analysis, but only applicable to an analysis of total *economic* disability.

[25] Employer disputes the scope of the stipulation with Claimant regarding Dr. Meyers' testimony. The stipulation was: "I am willing to stipulate that the opinions expressed by Dr. Meyers in his depo of 2015 would remain the same if he were deposed again on [12/29/17]". Claimant argues that this means that Dr. Meyers' opinion would be considered a "fresh" opinion as if given at the 2019 hearing; Employer argues that it speaks as of the date given, 2015.

8

on the previous determination of TTD status to her detriment. Therefore, Employer has a duty to fulfill its obligations under the terms of the Agreement in order to prevent Claimant from experiencing an unjust loss. Employer rejects Claimant's argument that her reliance on a doctor's previous determination of TTD status to her detriment now estops Employer from denying her TTD status before the Board. Employer argues that, in order for the reliance rule to apply, "the claimant's treating physician must have ordered the claimant not to perform any work. That is, Claimant's treating physician must have issued a "no-work" order."[26] In the instant case, there is no such order.

Employer concedes that the ordinary analytical framework to be followed by the Board is to initially show that Claimant is not completely disabled. However, Employer argues that the Board did not err procedurally here by failing to follow this framework, since this is not an ordinary case because Claimant was 60 years old when injured, she took no steps to return to work, and her doctor's records state she retired. Thus, the ordinary framework "should not be construed as a rule of law to be inflexibly applied," and "the Board must make practical adjustments on the order of the presentation of the evidence."[27] The Board was

---

[26] *Robbins v. Helmark Steel*, 29 A.3d 246 (Table) (Del. 2011).

[27] *Chrysler Corp. v. Duff*, 314 A.2d 915 at 918 fn 1 (Del. 1973).

therefore correct, argues Employer, in immediately considering whether Claimant voluntarily removed herself from the open labor market because, if she did, other issues, such as whether she has restrictions that might make her partially disabled, are moot. Claimant counters that *Duff* involved displaced worker status, not total disability status, and points out that *Roos* referenced *Duff* itself in holding that "[w]here an employer seeks to terminate a claimant's total disability benefits, the employer must initially show that the claimant is not totally incapacitated."[28]

As a backup, Employer further concedes that the Board made no *explicit* finding as to TTD on remand. However, it argues that the Board *implicitly* finds that Claimant is no longer totally medically disabled. It points to statements in Board Decision One and argues that I can look at subordinate facts underlying the Board's conclusion when those facts can be determined, by implication, from the ultimate conclusion.[29] Employer also calls my attention to certain evidence and testimony of record which it claims support the Board's implied finding that Claimant was released to return to work in 2012 and is no longer totally disabled.[30] The Board, questioning the credibility of Dr. DuShuttle, states that

---

[28] *Roos Foods*, 152 A.3d at 1178 - 119 (citing *Duff*, 314 A.2d at 918 fn.1).

[29] *Haveg Industries, Inc. v. Humphrey*, 456, A.2d 1220 at 1222 (Del. 1983).

[30] For example, Employer argues that Dr. DuShuttle's testimony, after he released Claimant to light work in 2012, that he knew a return to total disability required a Physician's Report under 19 *Del. C.* §2322E(c), but that no Report was issued, implies that Claimant had not returned to total disability status.

"[i]n his 2019 testimony, Dr. DuShuttle attempted to retroactively totally disable Claimant from 2013, despite his acknowledgment of the absence of any disability form in Claimant's treatment records."[31] Employer argues that implicit in this statement is the Board's denial of Claimant's TTD status, and that the Board found that Claimant is no longer totally disabled as of the 2019 hearing.

Employer also directs my attention to oral statements made by the Board and verbal exchanges by the Board with Claimant's counsel in the transcript of the 2018 hearing, which reflect the Board's view that, after the 2012 release to return to work, no provider had written an order placing Claimant back on TTD status. Employer rested its case on February 2, 2018. Claimant began her case on February 2 2018, but did not finish so the hearing went into a second day. However, the second day was not until June 8, 2018. Between February 2, 2018 and June 8, 2018, Claimant's attorney asked Dr. DuShuttle to issue a total disability note, which he did. Claimant sought to introduce this note at the June 2018 hearing. Employer objected to the introduction of this subsequently created note. The Board sustained Employer's objection. Claimant did not appeal that ruling in her first appeal. Employer argues that she has thus waived the right to

---

[31] Board Decision Two at 13.

appeal that ruling in her second appeal.[32]  Employer argues that statements in Dr. Shuttle's records that Claimant is "not working" or has work restrictions are not the statutorily required "no work" orders, and the Board implicitly rejected them as to total disability status given the implied finding that Claimant is not totally disabled.

A lot of emphasis has been placed in this case on the Physician's Report documenting total disability required under 19 *Del. C.* §2322E(c) (the "Report"), and the absence thereof.  While I give this some weight, I do not consider it dispositive.  I do not think that the absence of a Report in and of itself should nullify a weight of contradictory evidence, and I suspect that more than a few treating physicians do not complete Reports.  I weigh it along with all other evidence.

Employer further rejects Claimant's argument that the Board nullified an existing Agreement for total disability, terminated compensation prior to entering an award ending payment, or made retroactive determinations about Claimant's TTD status.  Petitions for review seeking to terminate ongoing total disability benefits by nature involve a change in condition occurring prior to the filing of the petition, and there is no set period after such change in condition within which a

---

[32] *Walden v. Georgia-Pacific Corp.*, 738 A.2d 239 (Table) (1999).

12

petition for review must be filed. Under Delaware's statutory framework, once a petition is filed, claimants receiving total disability benefits continue to receive their total disability benefits from the workers compensation fund or the self-insured employer, until the petition is adjudicated, as occurred in this case. If the petition for review is granted, the order usually indicates that the total disability benefits are terminated as of the date of filing of the petition or as of the date of the hearing, as occurred in this case. Procedural delays such as those in this case (unavailability of witnesses, illness of Claimant's counsel, or commutation negotiations) do not change this result. In short, Claimant received TTD benefits throughout a nine-year period.

Claimant essentially argues that Employer's withdrawal of its 2013 and 2015 petitions precludes Employer, in its 2017 petition, from looking back and presenting evidence that she is not totally disabled. I find no authority for that proposition.

Employer rejects Claimant's argument that she was prejudiced because the Board found she did not look for work. Claimant argues that she believed she was under an existing TTD Agreement and thus had no obligation to search for work. Employer counters that Claimant, who had already been terminated by

Employer, could have testified at the 2018 Board hearing about any job search efforts undertaken between 2012 and 2018, but did not do so.

Claimant points to the following evidence from Dr. DuShuttle and Claimant at the 2019 hearing:

(1) Dr. DuShuttle's testimony explaining the changes in Claimant's condition that caused him to place Claimant on total disability status in 2013.[33]

(2) Dr. DuShuttle's testimony that he did not know that Claimant was retired when she stated that she was not working.[34]

(3) Dr. DuShuttle's testimony that at no point in time did he believe Claimant was retired in the traditional sense, or that she stopped working independent of her injuries.[35]

(4) Claimant's testimony that she has never considered herself to be retired.[36]

(5) Claimant stopped working because she was injured on her job, and she has not gone back to work because of her work injuries.[37]

(6) Claimant is not happy with her current lifestyle.[38]

Employer points to the following evidence:

(1) Claimant's consistent testimony that she made no effort to return to work after 2012.

(2) The October 18, 2012 note saying Claimant could work.

(3) The absence of a subsequent "no-work" note.

---

[33] Hrg. Tr. Three at 16-17; Depo. Dr. DuShuttle at 13-18 (July 22, 2019).
[34] Hrg. Tr. Three at 17-18; Depo. Dr. DuShuttle at 18-20 (July 22, 2019).
[35] Hrg. Tr. Three at 18-19; Depo. Dr. DuShuttle at 20-21 (July 22, 2019).
[36] Hrg. Tr. Three at 29.
[37] Hrg. Tr. Three at 29-30.
[38] Hrg. Tr. Three at 30.

14

(4)     The reference in Dr. DuShuttle's records that Claimant does not need a note because "patient states that she is retired, therefore does not need [a] work note."

(5)     The Board rejected the testimony of Claimant's experts seeking to retroactively totally disable Claimant,[39] which was contradicted by other evidence, such as the testimony of Neil Taylor and Dr. Kates.

The Board arguably mishandled the 2019 remand hearing procedurally. It focused primarily on the retirement issue, and then skipped from the retirement issue back to the total disability issue, instead of initially addressing whether Claimant is totally disabled, and, if not, whether Claimant is partially disabled. Moreover, instead of a clear, explicit finding on total disability in Board Decision Two, one has to read the tea leaves on that issue inferentially and implicitly. Nor was there a finding on partial disability. This is especially troubling since my remand Order directed the Board to consider *all* issues – including the total and partial disability issue – and not just the retirement issue. Perhaps the Board was unduly focused and predisposed on the retirement issue, and gave short shrift to the total disability issue in spite of our case law requiring a finding on total disability.

---

[39] Employer disputes the scope of the stipulation with Claimant regarding Dr. Meyers' testimony. The stipulation was: "I am willing to stipulate that the opinions expressed by Dr. Meyers in his depo of 2015 would remain the same if he were deposed again on [12/29/17]". Claimant argues that this means that Dr. Meyers' opinion would be considered a "fresh" opinion as if given at the 2019 hearing; Employer argues that it speaks as of the date given, 2015.

15

However, despite the Board's procedural errors, under the standard and scope of review applicable to my review of decisions of the Board on appeal, I find that there is substantial evidence to support the Board's findings of fact on the issue of total disability. I have given the factual decisions of the Board substantial deference, I have considered the record in the light most favorable to the Board, and I have resolved all doubts in the Board's favor. I have not retried the case, reweighed the evidence, or second-guessed the Board's credibility determinations. Whether I might or might not have come to a different conclusion on the facts is irrelevant, and I will not substitute my own judgment for that of the Board.

I have determined that the Board did not abuse its discretion in reaching its decision. The Board's decision is within the bounds of reason, and there is evidence in support of the factual findings of the Board. In my view, there is no mistake which constituted significant prejudice so as to have denied Claimant a fair hearing.

**Displaced Worker Status**

Our law on the determination of Claimant's displaced worker status is well-trodden ground. A "displaced worker" is someone who, "while not completely incapacitated for work, is so handicapped by a compensable injury that she will no longer be employed regularly in any well-known branch of the

16

competitive labor market, requiring a specially-created job if he is to be steadily employed."[40] A claimant determined to be a displaced worker can receive total disability benefits because she is economically totally disabled. To determine whether a claimant is a displaced worker, the Board first considers whether the claimant is *prima facie* displaced.[41] If she is not, the Board then considers whether she is *actually* displaced.[42]

It is Claimant's burden to prove that she is *prima facie* displaced.[43] Several factors must be considered by the Board to determine whether a claimant is *prima facie* displaced. These include the claimant's "age, education, general background, occupational and general experience, emotional stability, the nature of the work performable under the physical impairment and the availability of such work."[44] "[T]he finder of fact must take into consideration not only the medical testimony but also the facts and circumstances that may relate to the claimant as a "unit of labor" in his handicapped condition."[45] "[A] worker is *prima facie* displaced if she

---

[40] *Ham*, 231 A.2d 258 at 261.

[41] *Roos Foods v. Guardado, supra.*

[42] *Id.*

[43] *Howell v. Masonry*, 86 A.3d 1118, at *4 (Del. 2014); *Torres v. Allen Family Foods*, 672 A.2d 26, **7 (Del. 1995). As with the total disability issue, *supra,* Claimant did not argue her displaced worker status in her first appeal. Employer argues that she has thus waived the right to argue that status in her second appeal, citing *Walden v. Georgia-Pacific Corp.*, 738 A.2d 239 (Table) (1999).

[44] *Ham*, 231 A.2d 258 at 261.

[45] *Id.*

does not have the education, training, experience or skills to qualify her for work other than as a general laborer who is able to do only light or sedentary work."[46] In addition, a worker "may be totally disabled economically" and therefore displaced, "although only partially disabled physically."[47]

Claimant assigns seven errors to the Boards' findings on displaced worker status:

(1)    The Board's decision did not take into account the testimony of Claimant's vocational experts. The parties' vocational experts provided conflicting testimony on the subject of Claimant's displaced worker status. The Board was obligated, as a matter of law, to make an evidentiary determination concerning which testimony it would accept, and failed to do so.

(2)    The Board used *ex post facto* conclusions to determine that Claimant is not a displaced worker. It reasoned that "Claimant was only 62 years old at the time Dr. DuShuttle released her back to work and would have had several more years of productive work life left before she reached normal

---

[46] *Nanticoke Mem. Hosp. v. Roach,* 2004 Del. Super. LEXIS 296, at *10 (Super. Ct. Sept. 8, 2004).
[47] *Ham,* 231 A.2d 258 at 261.

18

retirement age."[48] Thus, the Board determined that Claimant's age in 2012 weighs against a current finding of displaced worker status. This disregards the fact that Claimant is now 69 years old and has been out of the workforce for more than nine years, which factors support *prima facie* displaced worker status.

(3)   The Board improperly relied on Claimant's "years of experience in different industries, including many years of sewing experience and assembly work, plus janitorial experience."[49] Yet Claimant's physical disability precludes her from now working in those industries, rendering her past job experience meaningless in the context of her current employability.

(4)   The Board exaggerated Claimant's testimony concerning her current technological abilities. Specifically, the Board held that Claimant is able to "operate a desk top computer and cellular telephone," implying she is adequately skilled in these abilities, which "prospective employers would find desirable."[50] The record, however, reflects very limited computer and cellular telephone skills. Employer's vocational

---

[48] Board Decision Two at 16.
[49] *Id.*

expert, Barbara Stevenson, agreed that Claimant's transferable skills do not include "computer skills" or "PC skills."[51]

(5) The Board erred by holding that Claimant cannot be an *actual* displaced worker because she "did not conduct any job search."[52] "Until the issue of total disability is resolved by the Board, the claimant is entitled to follow the no work instructions of the treating physician."[53]

(6) The Board declined to consider whether Claimant is able to perform the duties of any job for which a reasonable, stable market exists, on the basis that Claimant had voluntarily retired.[54]

(7) The Board erred in using a stale labor market survey. When analyzing displaced worker status, a stale labor market cannot be used to show the contemporaneous availability of employment.[55] Here,

---

[50] *Id.* at 17.

[51] Hrg. Tr. One at 160:22-161:2.

[52] Board Decision Two at 16.

[53] *Clements,* 831 A.2d at 879.

[54] Board Decision Two at 17.

[55] *See. e.g., Adams v. Shore Disposal,* 720 A.2d 272 at 273 (Del. 1998) ("A proper application of the displaced worker doctrine can only be made by considering the contemporaneous availability of employment"); *Sabo v. Pestex, Inc.,* 2004 Del. Super. LEXIS 387 at *8 (Super. Ct. Dec. 7, 2004) ("It is not equitable to have additional proceedings which do not have the benefit of information about current market conditions and available jobs.").

20

Employer's labor market survey is nearly two years old.

Claimant argues that she is a *prima facie* displaced worker because she is 69 years old, has a high school education, has been out of the workforce for more than nine years, is depressed, and has significant disabilities and physical restrictions. Her past experience with sewing, assembly lines, and as a janitor, consists of unskilled work in the general labor field. "[T]he displaced worker doctrine, as a whole, generally applies ... to unskilled workers who, due to their injuries, cannot return to heavy labor jobs and do not have the training or education for any comparable employment."[56]

Employer makes eight arguments against Claimant's displaced worker status:

(1)    Dr. DuShuttle's testimony that he released her to return to work in October 2012.

(2)    No subsequent physician's form taking her out of work.

(3)    Neil Taylor's testimony regarding Claimant's functional capacity evaluation results.

(4)    The testimony of Employer's medical examiner regarding Claimant's work capacity.

---

[56] *Lucas v. Leaseway Motorcar Transp.*, 1999 Del. Super. LEXIS 273, at *11 (Super. Ct.

(5)     Claimant herself testified regarding her age, activities, work experiences, and that she is a high school graduate who can read, write, speak English, make change, operate a phone, interact well with others and operate a computer.

(6)     Employer was free to give less credibility to the opinions of Claimant's vocational experts as to whether she is *prima facie* displaced.

(7)     Claimant *actually* displaced.[57] To demonstrate that status, Claimant must show that she conducted a reasonable job search but was unable to find employment due to her work injury.[58] In this case, Claimant testified that she did not conduct a job search.   Had Claimant introduced evidence of a reasonable job search, Employer would have had an opportunity to show through its vocational expert that there are jobs available in the open labor market for Claimant.   However, since there was no job search, Employer has no obligation to introduce evidence regarding available jobs.

(8)     Claimant's reliance on *Clements* is misplaced. Although *Clements* provides that, so long as Claimant is under a total disability order from

---

May 27, 1999).
[57] *Roos Foods, supra.*
[58] *Id.*

22

her treating doctor, she is entitled to rely on that order and is not required to look for work, in this case there was no such order,[59] hence no reliance on *Clements* is allowed.

Let me address here the two waiver arguments made by Employer: that in her second appeal to this Court, Claimant waived her right to object to the Board's refusal to admit Dr. DuShuttle's "no work" note into evidence with respect to both the total disability issue and her displaced worker status, because she failed to raise such an objection in her first appeal to this Court. I do not address that waiver argument here. It is unnecessary to my resolution of this case, given the sufficiency of myriad other facts which were before the Board.

Under the standard and scope of review applicable to my review of decisions of the Board on appeal, I find that there is substantial evidence to support the Board's findings of fact on Claimant's displaced worker status. I have given the factual decisions of the Board substantial deference, I have considered the record in the light most favorable to the Board, and I have resolved all doubts

---

[59] Employer rested its case on February 2, 2018. Claimant began her case on February 2 2018, but did not finish so the hearing went into a second day. However, the second day was not until June 8, 2018. Between February 2, 2018 and June 8, 2018, Claimant's attorney asked Dr. DuShuttle to issue a total disability note, which he did. Claimant sought to introduce this note at the June 2018 hearing. Employer objected to the introduction of this subsequently created note. The Board sustained Employer's objection. Claimant did not appeal that ruling in her first appeal. Employer argues that she has thus waived the right to appeal that ruling in her second appeal, citing *Walden v. Georgia-Pacific Corp.*, 738 A.2d 239 (Table) (1999).

in the Board's favor. I have not retried the case, reweighed the evidence, or second-guessed the Board's credibility determinations. Whether I might or might not have come to a different conclusion on the facts is irrelevant, and I will not substitute my own judgment for that of the Board.

I have found no errors of law in the Board's decision. Absent such errors of law, I have determined that the Board did not abuse its discretion in reaching its decision. The Board's decision is within the bounds of reason, and there is evidence in support of the factual findings of the Board. In my view, there is no mistake which constituted significant prejudice so as to have denied Claimant a fair hearing.

## Retirement

On remand, the Board determined that Claimant voluntarily retired for reasons unrelated to her work injuries. The determination of whether a worker has voluntarily removed herself from the labor market requires an evaluation of the totality of the circumstances.[60] The Board should consider, among other things, "whether the employee was physically capable of working at the previous job, whether the employee sought another job, whether the employee lost earning power due to the injury, whether the employee was below the

---

[60] *State v. Archangelo,* 2017 Del. Super. LEXIS 444, at *1 (Super. Ct. Aug. 9, 2017).

usual age for retirement" and "whether the decision to retire was motivated by the work-related injury."[61] "Delaware courts have held that 'traditional retirement' may render an employee ineligible for disability benefits, especially in circumstances where the employee is 'content with [the] retirement lifestyle.' In other words, an employee may be ineligible for disability benefits if the employee voluntarily removes himself from the workforce without intending to return. However, if the employee's decision is involuntary and pursuant to physical limitations arising from the work injury, the employee is still entitled to workers compensation."[62] The Superior Court has also considered the length of time the employer has paid a claimant total disability benefits in the context of the retirement analysis.[63]

Claimant argues that the Board's decision, however, focuses almost exclusively on statements by Claimant that she retired, to the exclusion of other factors.[64] The words "retired" and "retirement" have two different interpretations

---

[61] *Bruce v. Chrysler Grp.,* 2011 Del. Super. LEXIS 236, at *10 (Super. Ct. Apr. 27, 2011) (citation omitted).

[62] *State v. Allen-Anderson,* 2017 Del. Super. LEXIS 232, at *9-10 (Super. Ct. May 2, 2017) (citation omitted).

[63] *See Mladenovich,* 2011 Del. Super. LEXIS 40, at *17 ("So, Chrysler paid total disability benefits for nearly two years before presenting a petition to terminate on the premise that due to his retirement Claimant had removed himself from the work force.").

[64] In the Board's decision, the "Findings of Fact and Conclusions of Law" section includes eight pages discussing the issue of retirement. *See* Board Decision Two at 8-15. Three pages are used for reciting case law, *id.* at 8-11, and four-and-a-half pages are devoted to explaining why

25

under workers' compensation law. On the one hand, a person may be "retired" in the sense that she has voluntarily left or concluded a career or occupation, usually because of age. On the other hand, a person may be "retired" in the sense that a condition, injury, or disability prevents her from working. The Superior Court has expressly recognized this distinction.[65] Claimant argues that the Board failed to consider the distinction between traditional and forced retirement, despite Claimant's insistence at the hearing to do so.[66] Instead, whenever the word "retired" appeared in the record, the Board construed it to mean traditional retirement.

Claimant argues that her statements on the record, some of which were recorded in notes by other witnesses, establish that she retired because of her work injury. For example, in 2013, Claimant told Dr. DuShuttle she was "retired," but not because of age but rather because she was unable to do so because of her work injuries. In 2017, Claimant told Neil Taylor she "retired" before her anticipated age of 66 because she was forced to stop working because of her work injuries. Claimant herself testified at the remand hearing that she has never considered

Claimant's statements about retirement prove that she voluntarily retired, *id.* at 11-15.

[65] *See,* e.g., *Archangelo,* 2017 Del. Super. LEXIS 444, at *5 ("The court uses the term 'traditional retirement' in contradistinction to retirement forced by the job-related injury."); *Bruce,* 2011 Del. Super. LEXIS 236, at *10 (discussing retirement "in the traditional sense").

herself to be "retired" in the traditional sense.[67] Yet the Board interpreted the word "retirement" to mean retirement in the traditional sense. In effect, argues Claimant, the Board is substituting its own reasons for her retirement for her articulated reasons and other evidence of record.[68]

With respect to the notes made by Dr. DuShuttle and Neil Taylor of Claimant's statements, Claimant relies heavily on *Bruce v. Chrysler Grp.*[69] In that case, claimant told his physician that he was retired, which the physician wrote in a Workers' Compensation Physician's Report. The Board relied primarily on this comment in finding that the claimant voluntarily withdrew from the workforce, and on that basis denied the claimant's petition for recurrence of total disability. On appeal, the Superior Court reversed the Board's decision, explaining that there was nothing in the record to suggest the claimant retired for any reason other than his injury. The Court noted:

> The [retirement] comment was written by Dr. Crain [claimant's treating physician], someone who is not law trained and may not know the implications of his comment.[70]

---

[66] *See* Hrg. Tr. Three at 11:2-16, 55:12-17.

[67] *See* Hrg. Tr. Three at 29:18-25.

[68] *See Bruce,* 2011 Del. Super. LEXIS 236, at *10 ("The IAB committed an error of law by disregarding the only evidence presented and interjecting its own rationale as to why Appellant chose not to relocate.").

[69] 2011 Del. Super. LEXIS 236 (Super. Ct. Apr. 27, 2011).

[70] *Id.,* at *11-12 n.73.

27

Claimant argues that her own testimony provides the best explanation for her decisions, and the notes about retirement by Dr. DuShuttle and Neil Taylor were made or written by individuals who are neither law trained nor aware of the implications of their comments. Moreover, Dr. DuShuttle testified at the remand hearing:

> No, no matter how you look at it, I personally don't believe that she was retiring, regardless of her, you know, even if she hadn't had that injury or problem. I think that was the reason. She stopped working because of her injury. Maybe I used the word retired, but it was never because it was independent of her work injury.[71]

In addition to the statements and the notes about retirement on the record, the Board considered several other factors to support traditional retirement, all of which Claimant either disputes on the merits or claims were exaggerated by the Board:

(1)     Claimant was released to work in 2012 and has not searched for employment since that time.

(2)     Claimant's daily living activities include visiting a senior center, reading the bible, participating in charity

---

[71] Depo. Dr. DuShuttle at 20:14-21:13 (July 22, 2019).

walks, attending baseball games, and traveling.

(3)     Claimant is able to drive.

(4)     Claimant downsized, sold her larger home and recently moved into a smaller townhouse.

(5)     Claimant recently began drawing Social Security benefits.[72]

Claimant also enumerates factors and evidence which she claims the Board failed to consider under Delaware case law:

(1)     Whether Claimant was physically capable of working at her previous job.

(2)     Whether Claimant lost earning power due to the injury.

(3)     Whether Claimant was below the usual age for retirement.

(4)     Whether Claimant's retirement was motivated by the work injury.

(5)     Whether, and for how long, Employer has been paying Claimant TDD benefits.

---

[72] Claimant began drawing social security benefits after her TTD payments were terminated. The Board learned of this after Claimant's counsel's closing argument upon questioning Claimant's counsel. Hrg. Tr. Three at 64:2-21. Claimant's counsel objects to the admission of his statements as evidence as an abuse of discretion. Employer counters that, even if it is, Claimant's failure to raise this issue through a Rule 21 motion to the Board substantively conflicts with the exhaustion of administrative remedy doctrine and so should fail. *Levinson v. Del. Comp. Rating Bureau*, 616 A.2d 1182 (Del. 1992).

In addition, Claimant enumerates factual evidence relevant under the "totality of circumstances" test, which the Board failed to consider:

(1)    Claimant is depressed and takes anti-depressant medication.

(2)    Claimant sits alone in the house all day.

(3)    Claimant feels useless because she cannot work.

(4)    Claimant's sons help her every day to do her grocery shopping, laundry, and pay her bills.

(5)    Claimant's enjoyment of working, and her desire to work if she could do so without causing further injury.

(6)    Claimant does not consider herself to be retired.

(7)    Claimant stopped working because she was injured on the job, and has not gone back to work because of her injuries.

In her Reply brief, Claimant argues that there is not substantial evidence to support the Board's decision. She claims that the Board's decision is based on a handful of cherry-picked findings, along with an incomplete, one-sided review of the evidence, packaged in a vacuum. "[S]ome evidence, or any evidence, may be insufficient to support the factual findings of the Board. The evidence must be substantial; and it is the duty of the reviewing court to weigh and evaluate the

30

evidence for sufficiency to support the findings."[73]  "[W]here the record shows conflicting or inconsistent facts, the Board must, with 'explicit detail,' set forth those facts upon which it relied in reaching its decision."[74]  Claimant cites these two cases to urge me not to reinterpret the evidence, but to consider all the evidence, fairly and reasonably, to see whether the Board could properly reach its conclusion on retirement.

I have done so and, under the standard and scope of review applicable to my review of decisions of the Board on appeal, I find that there is substantial evidence to support the Board's findings of fact on Claimant's retirement. I have given the factual decisions of the Board substantial deference, I have considered the record in the light most favorable to the Board, and I have resolved all doubts in the Board's favor.  I have not retried the case, reinterpreted the evidence, or second-guessed the Board's credibility determinations.  Whether I might or might not have come to a different conclusion on the facts is irrelevant, and I will not substitute my own judgment for that of the Board.

I have found no errors of law in the Board's decision.  Absent such errors of law, I have determined that the Board did not abuse its discretion in reaching its decision.  The Board's decision is within the bounds of reason, and there is

---

[73] *M.A. Hartnett, Inc. v. Coleman*, 226 A.2d 910 at 912 (Del. 1967).

31

evidence in support of the factual findings of the Board. In my view, there is no mistake which constituted significant prejudice so as to have denied Claimant a fair hearing.

**Exclusion of Evidence**

As discussed above, the Board on remand expressly held that it would not consider any evidence obtained after February 2, 2018, the first day of the two-day 2018 hearing.[75] Specifically, the Board would not allow a "no work" note prepared by Dr. DuShuttle which, in Claimant's view, would have supported her case. As discussed above, even had this note been introduced into evidence and reviewed by me as a part of the record, my decision in this case would be the same based on other evidence. Thus, assuming *arguendo* that this was error by the Board and violated my instruction that all evidence should be reviewed on remand, it did not prejudice Claimant and is not reversible error.

## CONCLUSION

For the reasons stated above, I **AFFIRM** the decision of the Board and **DENY** Claimant's appeal from the Board's decision on remand.

**IT IS SO ORDERED.**

---

[74] *Branch v. Chrysler Motors*, 1996 Del. Super. LEXIS 372 at *11 (Super. Ct. May 20, 1996).
[75] *See* Hrg. Tr. Three at 15:14-18.

Craig A. Karsnitz

cc:   Prothonotary