**David E. CHUBB, an individual, Plaintiff Below, Appellant,**

v.

**STATE of Delaware, a Delaware corporation, Defendant Below, Appellee.**

No. 15, 2008.

Supreme Court of Delaware.

Submitted: Sept. 3, 2008.
Decided: Oct. 24, 2008.

---

**15.** *Nalley v. State,* 2007 WL 2254539, at *2 (Del.).

**16.** *Gannon v. State,* 704 A.2d 272, 274 (Del. 1998).

**17.** *Culp v. State,* 766 A.2d 486, 490 (Del. 2001).

Bayard J. Snyder, Snyder & Associates, Wilmington, Delaware, for appellant.

Kimberly A. Harrison, Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, BERGER and JACOBS, Justices.

STEELE, Chief Justice.

David E. Chubb, the claimant below, appeals from a Superior Court judgment affirming an Industrial Accident Board decision. The Board concluded that Chubb did not prove that he was a *prima facie* displaced worker. On appeal, Chubb argues that the Superior Court erred by upholding the Board's decision that: (1) Chubb did not suffer a "recurrence" of total disability; (2) Chubb was not a *prima facie* displaced worker; and (3) the State was entitled to a credit for a third party settlement payment to Chubb. Because there is substantial evidence in the record to support the Board's findings and the record is free from legal error, we affirm.

### FACTS AND PROCEDURAL HISTORY

Chubb worked as a toll collector for the State of Delaware's Department of Transportation. On August 6, 2003, Chubb finished his shift and walked to the employee parking lot. As Chubb walked alongside another employee's car he caught his shoe under that car's tire. The driver of that car drove forward over Chubb's shoe, causing Chubb to fall onto his right side and injure his right shoulder.

Dr. Richard DuShuttle diagnosed and treated Chubb for a torn rotator cuff in his

right shoulder. As a result, Chubb underwent surgeries in October 2003 and February 2004. On May 27, 2004, Dr. DuShuttle opined that Chubb reached maximum medical improvement, and released Chubb to work, with the restrictions that Chubb could not conduct overhead activity and could only perform light duty with his left hand. On October 6, 2004, Dr. DuShuttle issued a permanency report, stating that Chubb had a 15% permanent impairment to his right shoulder. In January 2005, Dr. Jerry Case examined Chubb at the State's request. Dr. Case agreed with Dr. DuShuttle's diagnosis and conclusion that Chubb could resume work with the mentioned restrictions.

Cleared to work by Dr. DuShuttle, Chubb asked the State to allow him to return to his job collecting tolls. The State informed Chubb that, because of his restrictions, he could not work as a toll collector. The State offered Chubb the choice to resign or be terminated. Chubb chose termination.[1] Since that time, Chubb has not worked elsewhere or searched for other employment.

From the date of his injury on August 6, 2003 until August 6, 2005, PIP insurance paid Chubb his lost wages. Chubb initially received lost wages from the PIP insurance of the driver who injured him, until those PIP payments exhausted the driver's $25,000 policy limits. Chubb, then, received lost wages from his own PIP insurance, until those PIP benefits ended on August 6, 2005.

In October 2004, Chubb filed a Petition for Compensation with the Board. The State offered a settlement, which Chubb accepted and the Board later approved. In the settlement, the State acknowledged that the accident was compensable because it was work related. The State agreed that Chubb had been totally disabled from October 6, 2003 through May 11, 2004.[2] Under the compensation agreement, Chubb was entitled to 31.29 weeks of benefits at a weekly compensation rate of $259.70. The compensation agreement also stated that the State did not have to pay any amounts to Chubb, because PIP had paid Chubb's lost wages and medical bills for the entire agreed upon period of total disability.

Chubb also filed a personal injury claim against the driver who injured him. Chubb settled that claim in February 2005 and received a net payment of $15,770.44.

In September 2006, Dr. DuShuttle re-evaluated Chubb's right shoulder. Dr. DuShuttle issued a new permanency report, finding that Chubb's pain had worsened and that he had "even less motion than ... before" in his right shoulder. Dr. DuShuttle increased Chubb's permanency rating from 15% to 20%, while maintaining the same work restrictions imposed in 2004.

On November 15, 2006, Chubb filed a Petition to Determine Additional Compensation Due; seeking benefits based on (i) an alleged recurrence of total disability from May 11, 2004 onwards, (ii) permanent impairment of the right upper extremity, and (iii) disfigurement. The parties settled the permanency and disfigurement claims, and, as part of that settlement, the

---

1. The record states that the State terminated Chubb sometime in 2004. The exact date is unclear.

2. It is unclear why Chubb agreed to a closed period of disability and why he chose this particular time period. The accident occurred on August 6, 2003. Chubb had his first surgery on October 6, 2003. As for the end date, his doctor released him to work only on May 27, 2004, which was 16 days after the expiration of the compensation agreement.

State agreed that Chubb's permanency rating would be increased to 20%. The parties agreed that there would be a hearing before the Board on the issue of Chubb's alleged recurrence of total disability.[3]

At the April 5, 2007 hearing, the State requested the Board to order that any potential worker's compensation payments the State paid Chubb must be offset by the net recovery for Chubb's personal injury claim of $15,770.44. The State argued that Chubb did not have a recurrence of total disability because his condition did not change. The State argued that neither doctor found Chubb to be totally disabled because both permitted him to return to work with restrictions. Chubb argued that he continued to be totally disabled. Chubb urged that his age, education, and other factors created a *prima facie* case that he was a displaced worker. Chubb admitted that he did not seek other employment after his injury in August 2003.

Chubb was 70 years old at the time of the accident and had a tenth grade education. He worked in a manufacturing plant for 10 years and for a chemical plant for 21.5 years as a chemical operator. Two months after retiring from his job as a chemical operator, Chubb started working fulltime as a toll collector for the State of Delaware. Collecting tolls required Chubb to input the vehicle class on a computer screen and take the money for the tolls. Although Chubb used both hands to collect tolls before his injury, he insisted that he could adequately perform his responsibilities with his left hand.

The Board's decision on May 14, 2007 held that: (1) Chubb had not satisfied his burden of proving a "recurrence" of total disability (physical disability) after May 11, 2004, which was the end date of the period of total disability agreed to by Chubb and the State; (2) Chubb had not demonstrated that he was *prima facie* displaced from the competitive labor market (economic disability); and (3) the State was entitled to the requested offset. The Board noted that, even though his doctor had not released him to work until May 27, 2004, Chubb presented no evidence that his condition worsened after the voluntary disability termination date of May 11, 2004. The Board did not address whether Chubb was a displaced worker because Chubb did not present that evidence at the hearing. Chubb appealed the Board's decision to the Superior Court which, in a Memorandum Opinion dated December 14, 2007, affirmed the Board's decision. This appeal followed.

### ANALYSIS

■■■ Where the Board's decision is supported by substantial evidence and is free from legal error, we will affirm.[4] We do not weigh the evidence, determine questions of credibility, or make our own factual findings.[5] We determine only whether the evidence is legally adequate to

---

3. The parties stipulated that the case would be heard and decided by a Workers' Compensation Hearing Officer, in accordance with 19 *Del. C.* § 2301B(a)(4). When hearing a case by stipulation, the Hearing Officer stands in the position of the Board. 19 *Del. C.* § 2301B(a)(4).

4. *General Motors v. Freeman*, 164 A.2d 686, 689 (Del.1960); *Histed v. E.I. DuPont DeNem-*

*ours & Co.*, 621 A.2d 340, 342 (Del.1993). Substantial evidence is evidence that a reasonable person might accept as adequate to support a conclusion. *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 899 (Del.1994).

5. *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del.1965).

support the Board's factual findings.[6] Alleged errors of law, however, are subject to *de novo* review.[7]

## I. Did Chubb Suffer a Recurrence of Total Disability?

■ Chubb filed a Petition to Determine Additional Compensation Due pursuant to 19 *Del. C.* § 2347.[8] Under that section, if an employee's incapacity to work (total disability) has recurred, the Board may amend a previous compensation award or agreement.[9] The issue here is whether the Board erred by holding that Chubb failed to establish a recurrence of total disability after May 11, 2004—the end date of the agreed upon period of total disability. On appeal, we must analyze two separate issues: (1) what constitutes a "recurrence" of total disability under section 2347; and (2) whether Chubb's impairment is a "return" of total disability.

■ Chubb had the burden of proving that he suffered a recurrence after he voluntarily terminated his total disability benefits.[10] We have defined "recurrence" as "the *return* of an impairment without the intervention of a new or independent accident."[11] Focusing on the word "return," the Board held that when an employee's impairment remains unchanged, there can be no "return"—and therefore no "recurrence"—of total disability. The Board agreed with both Dr. DuShuttle's and Dr. Case's opinions that Chubb's permanency rating increased from 15% to 20% and his work restrictions remained unchanged. Those doctors described a permanency rating as a measurement of a person's disability because of their pain level and mobility of that extremity. Dr. Case further opined that the patient's movement could be better or worse depending on the day. Neither doctor opined that Chubb's restrictions should have been altered because of the increased permanency rating.

Work restrictions that continue to impair an individual in the same manner do not support a finding that that individual had a recurrence of total disability. If a condition has not changed for the worse, then a no "recurrence" has occurred.[12] Furthermore, a slight change in impairment will not support a finding of recur-

---

6. *Id.* at 66–67; 29 *Del. C.* § 10142(d).

7. *Darnell v. BOC Group Inc.*, 2001 WL 879911, at *3 (Del.Super.) *aff'd*, 2002 WL 370289 (Del.).

8. 19 *Del. C.* § 2347 relevantly provides:
   On the application of any party in interest on *the ground that the incapacity of the injured employee has subsequently terminated, increased, diminished or recurred . . . ,* the Board may, at any time, but not oftener than once in 6 months, review any agreement or award.
   On such review, *the Board may make an award ending, diminishing, increasing or renewing the compensation previously agreed upon or awarded,* and designating the persons entitled thereto, subject to this chapter, and shall state its conclusions of facts and rulings of law. (emphasis added).

9. *Id.*

10. *Strawbridge & Clothier v. Campbell*, 492 A.2d 853, 854 (Del.1985).

11. *Walden v. Georgia–Pacific Corp.*, 1999 WL 801437, at *3 (Del.) (quoting *DiSabatino & Sons, Inc. v. Facciolo*, 306 A.2d 716, 719 (Del.1973) (emphasis added)). In *DiSabatino*, we held that: "[t]he term 'recurrence' is used in common parlance to describe the return of a physical impairment, regardless of whether its return is or is not the result of a new accident. As applied in most workmen's compensation cases, however, it is limited to the return of an impairment without the intervention of a new or independent accident." *DiSabatino*, 306 A.2d at 719.

12. *Walden*, 1999 WL 801437, at *3.

rence in total disability.[13] Because a slight change in impairment does not support a finding of recurrence, neither does a continuation of impairment.

The Board had substantial evidence supporting a finding that a percentage increase in a permanency rating is not a "return" in the impairment, because an increase in this rating alone did not affect Chubb's ability to work. Rather, the rating quantifies the patient's mobility and discomfort. The Board correctly held that the work restrictions were the proper measure to determine the amount of Chubb's disability. Therefore, the Board had substantial evidence supporting a conclusion that Chubb had not shown a "return" of total disability.

## II. Was Chubb a Prima Facie Displaced Worker?

Chubb alternatively claims that he was entitled to benefits as a *prima facie* displaced worker.[14] An employee who is only partially disabled *physically* can nevertheless be totally disabled *economically*, i.e., "displaced" from employment.[15] A claimant can establish displace-

ment by either a *prima facie* showing or by showing "reasonable efforts to secure suitable employment which have been unsuccessful because of the injury."[16] It is undisputed that Chubb made no efforts to secure employment after losing his job with the State in 2004. Therefore, he is entitled to refile with the Board for benefits after making those efforts. He argues, nonetheless, that he satisfied his burden of showing that he is a *prima facie* displaced worker.

A "displaced worker" is "a worker who, while not completely incapacitated for work, is so handicapped by a compensable injury that he will no longer be employed regularly in any well known branch of the competitive labor market and will require a specially-created job if he is to be steadily employed."[17] The worker can establish a *prima facie* case if he has "obvious physical impairment, coupled with other factors such as the injured employee's mental capacity, education, training, or age."[18]

The Board held that because Chubb based his petition on an allegation of "re-

---

**13.** *Cullen v. State*, 2007 WL 1241841, at *2 (Del.).

**14.** The Board addressed Chubb's displaced worker claim, over the State's objection, and found that Chubb failed demonstrated that he was a *prima facie* displaced worker. During its closing, the State argued that the Board should not consider Chubb's displaced worker claim because Chubb did not identify that claim on the pretrial form or at any time before the hearing. The Board ruled that the State's objection was moot, because its decision favored the State. Because the Board, despite the State's objections, ruled on his displaced worker claim, Chubb has preserved his right to appeal that ruling.

**15.** *Huda v. Continental Can Co.*, 265 A.2d 34, 35 (Del.1970) (citing *Ham v. Chrysler Corp.*, 231 A.2d 258, 261 (Del.1967)).

**16.** *Torres v. Allen Family Foods*, 672 A.2d 26, 30 (Del.1995). If the employee shows that he is a *prima facie* displaced worker or that he made "reasonable efforts to secure suitable employment which have been unsuccessful because of the injury," the burden shifts back to the employer to show the availability of work within the employee's capabilities. *Torres*, 672 A.2d at 30. *See Lee v. UE&C Catalytic, Inc.*, 1999 WL 459257, at *2 (Del.Super.) ("[T]here are two ways an injured employee initially can be deemed a displaced worker. First, the worker's unemployability may be readily apparent. Second, if unemployability is not apparent, the employee may undertake to show that he sought work but was unsuccessful because of his injury.").

**17.** *Chrysler Corp. v. Duff*, 314 A.2d 915, 917 (Del.1973) (quoting *Ham*, 231 A.2d at 261).

**18.** *Duff*, 314 A.2d at 916.

currence," the proper inquiry was "whether any of these factors worsened or changed since May 2004." Chubb need not show a change in his physical impairment to show that he is economically displaced.[19] The Board found that Chubb's work restrictions, intelligence, education, and training remained unchanged since the agreed upon termination date. The Board noted that Chubb's age, 73, would normally weigh in favor of finding displacement, but in this instance, there was no meaningful difference between Chubb's age at the time of the accident and his current age. Finally, the State's refusal to rehire the injured employee is another factor, which, although not dispositive, "may weigh heavily" in the analysis.[20] Here, the Board noted that Chubb's termination after the work related accident was insufficient to prove that "no other jobs would be available to [Chubb] in the competitive labor market." In determining if Chubb was a *prima facie* displaced worker, no one factor is necessarily decisive.[21] There was substantial evidence for the Board to conclude that Chubb did not present a *prima facie* case that he was a displaced worker.

We recognize that the Board only considered whether Chubb presented a *prima facie* case that he was a displaced worker. The Board noted that Chubb did not try to find another job. Hence, Chubb is not without recourse. He can file again and prove that he is a displaced worker by evidence of "reasonable efforts to secure suitable employment which have been unsuccessful because of the injury."[22]

### III. Was The Offset Requested by The State Properly Granted?

 The third issue is whether the Superior Court erred by concluding that the State was entitled to offset any payments to be made to Chubb by the net recovery Chubb received, totaling $15,770.44, for his personal injury claim from the insurance company of the driver who injured him.

Under 19 *Del. C.* § 2363(e), "[a]ny recovery against [a] third party for damages resulting from personal injuries ... shall first reimburse the employer or its workers' compensation insurance carrier for any amounts paid or payable under the Workers' Compensation Act...." Therefore, the Board committed no legal error by granting the State's request that any payments made by it to Chubb be offset by Chubb's recovery for his personal injury claim.

### CONCLUSION

The decision of the Industrial Accident Board is supported by substantial evidence and is free of legal error. The decision of the Board is affirmed.

---

19. *Layton Home For Aged v. Curtis*, 2000 WL 1611098, at *4 (Del.Super.), *aff'd*, *Layton Homes For Aged v. Curtis*, 2001 WL 120520 (Del.).

20. *Torres v. Allen Family Foods*, 672 A.2d 26, 30 (Del.1995) (citing *Chrysler Corporation v. Duff*, 314 A.2d 915, 917–18 (Del.1973) where this Court stated that "[o]ne factor which may weigh heavily is the refusal of the employer, because of the injury, to offer the employee the lighter work which the employee is capable of performing. Indeed, it has been suggested indirectly that this factor alone may legally satisfy any burden of the employee.").

21. *Id.*

22. *Id.*