# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

KRISS CONTRACTING,

    Employer-Below,
    Appellant

v.

JOSE GONZALEZ,

    Claimant-Below,
    Appellee.

)
)
)
)
)
)
)
)
)
)
)

C.A. No. S20A-09-001 RHR

Decided: September 30, 2021

## MEMORANDUM OPINION

*Upon Consideration of Appellant's Appeal from the Decision of the Industrial Accident Board* **– AFFIRMED**

John W. Morgan, Esquire, Heckler & Frabizzio, Wilmington, Delaware, *Attorney for Employer Below-Appellant.*

Walt F. Schmittinger, Esquire, Schmittinger and Rodriguez, Dover, Delaware, *Attorney for Claimant Below-Appellee.*

ROBINSON, J.

## I. INTRODUCTION

Kriss Contracting ("Employer") filed a Petition for Review with the Industrial Accident Board ("IAB") to terminate the total disability benefits of Jose Gonzalez ("Claimant"). Claimant, meanwhile, filed a petition seeking approval for platelet-rich plasma ("PRP") therapy. The IAB held a hearing on July 10, 2020 to consider the two petitions. It issued a written decision on August 3, 2020 finding that Claimant was a *prima facie* displaced worker and denying Employer's Petition. The IAB also found that the proposed PRP therapy was not reasonable and necessary. Employer appealed to this Court challenging the finding that Claimant was a *prima facie* displaced worker. For the following reasons, the IAB's decision is affirmed.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Claimant was injured in several work-related accidents in 2007, including one on September 15, 2007. His case has been the subject of several prior hearings before the IAB.

At the IAB hearing, Employer presented testimony via deposition of Jason P. Brokaw, M.D. Dr. Brokaw examined Claimant on four occasions: December 20, 2016; June 14, 2018; December 10, 2019; and June 3, 2020. After his examination and review of the three functional capacity evaluation ("FCE") reports, Dr. Brokaw stated he believed it would be safe for Claimant to begin work with "sedentary to

2

light physical demand capacity up to four hours per day to begin with, and then gradually increasing to full time over the next two to three months."[1] Based on his review of the jobs listed in the labor market survey prepared for Employer, he opined that they were appropriate for Claimant.

Dr. Brokaw testified about the three FCEs in question. The first was performed by ATI Physical Therapy on August 23, 2018. It indicated Claimant could work in a sedentary to light duty capacity. Dr. Brokaw agreed with this report. The second began on April 23, 2020, but Claimant was unable to complete it that day but he completed it on May 5, 2020. This second FCE indicated that Claimant was capable of sedentary to light duty work but only in a part-time capacity. Dr. Brokaw also agreed with this report. The third FCE was performed by Comprehensive Spine Center on June 19, 2020. Dr. Brokaw testified that Comprehensive Spine Center is owned by Dr. Ganesh Balu who is one of Claimant's doctors and that the FCE was performed by an athletic trainer employed by Dr. Balu. Dr. Brokaw testified that this third FCE was "absolutely unusual and inappropriate. It is a self-referral, and makes it a biased test that would not necessarily be a good, accurate test of the patient's abilities."[2]

---

[1] I.A.B Hr'g Tr. 7/10/20, at 37:9-22 (hereinafter "Tr. at ___").
[2] Tr. at 41:4-14.

3

Employer's next witness was Truman Perry, III who performed a labor market survey in early 2020. Mr. Perry considered that Claimant was sixty-three years old and had a 10th grade education. According to the information available to Mr. Perry, Claimant was a laborer for Employer and he previously worked as a farm laborer from March 1979 until September 2003. Mr. Perry identified nine job opportunities, including jobs at a local casino, a fast-food restaurant, and an area movie theater. Mr. Perry noted that these employment opportunities allowed for mostly sedentary work with limited need for walking. The jobs ranged from nineteen to thirty-eight miles from Claimant's residence.

Mr. Perry acknowledged that his initial report considered only full-time employment opportunities. In response to information obtained by the parties from the depositions of the doctors, Mr. Perry updated his report prior to the hearing to include part-time work. Some of the identified jobs allowed for two-hour shifts, and others, four-hour shifts. Mr. Perry speculated, over objection by Claimant, that there were other, similar jobs available to Claimant.

On cross-examination, Mr. Perry did not seem particularly familiar with the opinions of the examining doctors or the prior decisions of the IAB related to Claimant. He acknowledged the most recent FCE was more restrictive than the prior ones. There was general disagreement, on cross-examination and on redirect, with whether the COVID-19 crisis helped or hurt Claimant's prospects for employment.

4

Claimant argued that many people had been laid off and were unable to find work, but Mr. Perry testified that many employers had unusually high numbers of vacancies. The parties speculated whether increased unemployment benefits disincentivized people from looking for work. Mr. Perry acknowledged that of the potential employers with whom he consulted, none had offered Claimant a job, although they invited him to apply.

Claimant presented his case through the depositions of Kennedy Yalamanchili, M.D. and Ganesh Balu, M.D. Dr. Yalamanchili is Claimant's treating spine surgeon. He testified that although he believed Claimant was "structurally able" to work,[3] he believed it would be unrealistic for Claimant to return to gainful employment. Dr. Yalamanchili deferred to Dr. Balu, who has treated Claimant since his 2007 accident, for determining when Claimant could return to work. Dr. Balu reviewed his history of treating Claimant and the reasons he believed the PRP treatment was necessary. When asked to sum up his prognosis, Dr. Balu stated:

> Our current diagnosis, so to speak, is failed back surgery with chronic lumbar radiculopathy and chronic pain, and he also has in the latest MRI that [sic] he has epidural scars causing pain from arachnoiditis, which is a painful condition, so he's expected to feel or experience chronic pain. He's expected to take certain medications from us in the least amount possible to manage his pain and also manage exacerbations either with therapy interventions or spinal injections. These spinal injections could be a radiofrequency ablation, epidural

---

[3] Tr. at 94: 5.

injections, nerve block injections, or, if he's allowed to try, a PRP injection. That's our treatment plan.[4]

Dr. Balu believes Claimant will need treatment for pain for the rest of his life. Dr. Balu also testified that Claimant was not fit for work at the time. Dr. Balu's conclusion was based, in part, on Claimant's worsening condition and his inability to perform the FCE in a single session.

On cross-examination, Dr. Balu was asked about all three FCEs, including the one performed at the Comprehensive Spine Center on June 19, 2020. Dr. Balu stated that the athletic trainer who did the evaluation was qualified to administer the test and to utilize the software that runs the test. Dr. Balu testified that this FCE indicated that Claimant was unable to work in any capacity. Finally, Dr. Balu testified that Claimant drives his own car and is capable of driving short distances.

Claimant also testified. He stated he had worked for Employer for three years before his injury. He was a general laborer and confirmed that his work was "heavy, physical, manual work."[5] Prior to working with Employer he did concrete work in Texas for seventeen or eighteen years and then he worked at a farm for twenty years. He testified he had no formal schooling after he dropped out of school in the 10th grade. He stated that after a surgery with Dr. Yalamanchili he began to feel better

---

[4] Claimant's Ex. No. 2 at 31-32.
[5] Tr. at 116:23-24, 117:1.

and his medications were reduced, but after several months the pain returned worse than before.

Claimant testified that he was limited in what he could do around the house and had sought help from friends to do even basic cleaning tasks. He stated he had a hard time driving very far. At his April 23, 2020 FCE, he was asked to bend over and when he did, he claimed it resulted in a pinched nerve that rendered him unable to walk. He testified that he had to be taken out in a wheelchair and had to be driven home. He completed the evaluation at a second appointment on May 5, 2020. Claimant denied that he could work.

On cross-examination, Claimant testified that he drove forty minutes to get to his attorney's office and planned to drive home. He admitted he had not looked for a job since 2007.

Employer then briefly recalled Mr. Perry. Mr. Perry stated that nothing he heard from Claimant changed his previously stated opinions.

In its written decision, the IAB found that Claimant was a *prima facie* displaced worker and denied Employer's Petition.[6] The IAB concluded:

> In addition to Claimant's functional limitations, he is 63 years old and will not have many (if any) more years of useful work life in front of him before reaching a normal retirement age. Claimant has a 10th grade education, but no other education or training. He was a laborer and ditch digger for Employer and has worked his entire life as a manual laborer

---

[6] The IAB also denied Claimant's request for PRP treatment. The decision denying that request was not appealed.

and/or migrant worker. Claimant has minimal, if any, transferable skills beyond those of a manual laborer.[7]

The IAB gave great weight to the fact that Claimant could not complete his FCE in one meeting, referencing that fact several times throughout its decision.

## III.    THE PARTIES' CONTENTIONS

On appeal, Employer claims the IAB erred as a matter of law in finding Claimant was a *prima facie* displaced worker. Employer argues that all three of the doctors—Employer's doctor and Claimant's two doctors—found that Claimant could work in a sedentary capacity. Additionally, it argues that because Claimant has not tried to find a job, even when he was not receiving disability benefits, Claimant could not be found to be a displaced worker. Employer points to several other decisions of the IAB where the claimants were arguably less able to find work than Claimant in this case, but where the IAB did not find them to be displaced workers.

Employer also contends that even if Claimant is found to be a *prima facie* displaced worker, Employer presented sufficient evidence that there were jobs available for Claimant. Employer points to the testimony of the doctors that Claimant was capable of sedentary work for two to four hours each day. And, further,

---

[7] *Jose Gonzales v. Kriss Contracting*, No. 1315631 at 18 (Del. I.A.B. Aug. 3, 2020).

8

the labor market survey showed there were many jobs that met the criteria set out by Claimant's doctors.

Claimant argues the IAB was correct in finding him to be a *prima facia* displaced worker. He argues because he had no training or experience to do any job other than general labor, combined with his medical limitations, he meets the criteria to be *prima facie* displaced. Claimant points out that a *prima facie* displaced worker is not someone who is completely incapable of doing any work, but rather is someone who is so limited in his options for work that it would be nearly impossible to find a job. Claimant also cites to cases where claimants with arguably better circumstances than his were found to be *prima facie* displaced workers.

Claimant maintains that because the IAB found him to be a *prima facie* displaced worker, Employer has the burden to show there was work available for Claimant. Further, Claimant argues that just because Mr. Perry found jobs that were sedentary and part-time, that finding does not in and of itself mean that Claimant would actually be hired for those jobs. Finally, Claimant points out that in a prior IAB decision in this case issued in February 2019, it denied a similar petition to terminate benefits filed by Employer. Prior to that decision, Claimant was given a FCE that he was able to complete in one day; because he could not complete the more recent FCE in one day, Claimant argues he is in a worse condition than he was at the prior hearing.

## IV.  DISCUSSION

Employer raises two issues on appeal: (i) whether the IAB erred as a matter of law when it determined that Claimant was a *prima facie* displaced worker, and (ii) if Claimant is a *prima facie* displaced worker, did Employer meet its burden in showing employment opportunities within Claimant's capabilities. As noted at oral argument, the IAB's decision is disjointed because it first addresses the availability of regular employment for Claimant, then discusses Claimant's status as a displaced worker, and then finds him to be a *prima facie* displaced worker. Nevertheless, the decision places the burden on the appropriate parties, relies on substantial evidence, and applies the appropriate standards. For these reasons, I find that the IAB's decision must be affirmed. I will first address the IAB's determination of Claimant as a *prima facie* displaced worker, then I will address the availability of employment.

### A. Standard of Review

On an appeal from the IAB, this Court does not weigh evidence, determine questions of credibility, or make its own factual findings,[8] and must consider the record in the light most favorable to the prevailing party below.[9] The review is limited to an examination of the record for errors of law and a determination of

---

[8] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).
[9] *Weitzel v. State,* 2016 WL 4249766, at *5 (Del. Super. Aug. 9, 2016).

10

whether substantial evidence supports the IAB's findings of fact and conclusions of law.[10] Substantial evidence equates to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[11] The IAB is free to adopt the opinion testimony of one expert over another, and that opinion, if adopted, will constitute substantial evidence.[12] Errors of law are reviewed *de novo*.[13] Absent error of law, the standard of review for an IAB's decision is abuse of discretion.[14] Abuse of discretion occurs when the IAB exceeds the bounds of reason in view of the circumstances.[15]

## B. <u>Termination of Total Disability Benefits</u>

Under 19 *Del. C.* § 2347, the IAB may end or reduce compensation previously agreed to upon the application of any party in interest, on the ground that the incapacity of the injured employee has subsequently terminated or diminished. Where an employer seeks to terminate a claimant's total disability benefits, the employer must initially show that the claimant is not completely incapacitated.[16] If the employer is successful in meeting this burden, a claimant may then rebut that

---

[10] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981).
[11] *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009).
[12] *Bolden v. Kraft Foods*, 889 A.2d 283, 2005 WL 3526324, at *2 (Del. 2005) (TABLE).
[13] *Person-Gaines*, 981 A.2d at 1161.
[14] *Digiacomo v. Bd. of Pub. Educ.*, 507 A.2d 542, 546 (Del. 1986).
[15] *Bromwell v. Chrysler LLC*, 2010 WL 4513086, at *3 (Del. Super. Oct. 28, 2010).
[16] *Chrysler Corp v. Duff,* 314 A.2d 915, 918 n.1 (Del. 1973).

showing by establishing that he is a displaced worker.[17] A displaced worker is one who, while not completely incapacitated for work, is so handicapped by a compensable injury that he can no longer be employed regularly in any well-known branch of the competitive labor market and will require a specially-created job if he is to be steadily employed.[18]

The IAB may also find a worker to be *prima facie* displaced. A worker may be considered *prima facie* displaced depending on the degree of obvious physical impairment, coupled with the worker's age, education, general background, occupational and general experience, emotional stability, the nature of the work able to be performed with the physical impairment, and the availability of such work.[19] If the evidence of the physical impairment, along with the factors above, place employee in the *prima facie* displaced worker category, the claimant need not show that he made reasonable efforts to secure employment.[20] If he is not *prima facie* displaced, however, the burden is on the employee to show he made reasonable efforts to secure employment.[21] Once an employee succeeds in showing that he is a *prima facie* or an actually displaced worker, the burden shifts to the employer "to

[17] *Roos Foods v. Guardado*, 152 A.3d 114, 118 (Del. 2016).
[18] *Ham v. Chrysler Corp.*, 231 A.2d 258, 261 (Del. 1967).
[19] *Roos Foods*, 152 A.3d at 119 (Del. 2016) *citing Chrysler Corp v. Duff*, 314 A.2d at 916.
[20] *Franklin Fabricators v. Irwin*, 306 A.2d 734, 737 (Del. 1973).
[21] *Sabo v. Pestex, Inc.*, 2004 WL 2735457, at *4 (Del. Super. Oct. 28, 2004), *modified*, 2004 WL 2827902 (Del. Super. Dec. 7, 2004), *aff'd*, 892 A.2d 1084 (Del. 2006).

show the availability to the employee of regular employment within the employee's capabilities."[22]

## C. **There Is Substantial Evidence For The IAB's Finding That Claimant Was A *Prima Facie* Displaced Worker.**

Substantial evidence supports the IAB's finding that Claimant is a *prima facie* displaced worker. The IAB duly considered Claimant's physical impairment, age, education, general background, occupational and general experience, emotional stability, the nature of the work performable under the physical impairment, and the availability of such work. I find there is substantial evidence supporting this finding and will not disturb it. Claimant is 63 years old and has worked as a manual laborer his entire life. Because of his work-related injuries, he can no longer do this type of physical work. He never completed the 10th grade and has limited training or experience in any other field. His injuries were obvious, and he was unable to complete the April 2020 FCE in a single day because of intense pain. Dr. Balu, the spine surgeon, testified that Claimant was not fit for any work. The IAB was not unreasonable in its review of this evidence and its conclusion that Claimant is a *prima facie* displaced worker.

---

[22] *Chrysler Corp v. Duff*, 314 A.2d at 916-17.

Employer cites several IAB decisions,[23] and Superior Court decisions[24] where the IAB found similar claimants did not meet the criteria to be considered *prima facie* displaced. But this Court does not make its own factual findings and, instead, only reviews the IAB's decisions to ensure there is substantial evidence supporting its factual findings. This Court's review is deferential.

Employer maintains that Claimant can work in a sedentary capacity. The IAB considered this argument and rejected it. While Dr. Brokaw concluded that Claimant could work, Dr. Yalamanchili deferred to Dr. Balu on actual capacity to work, and Dr. Balu opined that Claimant cannot work. The IAB considered the testimony of the three doctors and gave more weight to the opinions of Claimant's doctors. The IAB also looked to the age of Claimant, his past work history, his education, and his injuries and found that Claimant is a *prima facie* displaced worker. There is substantial evidence for the IAB's finding that Claimant is a *prima facie* displaced worker. Because this finding is supported by substantial evidence and therefore should not be disturbed, Claimant does not need to show that he made efforts to secure employment.

---

[23] *Yolande Georges v. Allen Family Foods*, No. 1344607 (Del. I.A.B. March 27, 2012), *Flores v. Zenith Prods. Corp.,* No. 1368260 (Del. I.A.B. Jan. 14, 2013), *Cabrera-Garcia v. E. States Constr*., No. 1174440 (Del. I.A.B. June 15, 2004).

[24] *Roos Foods*, 152 A.3d 114, *Guffey v. Purdue Farms*, Inc., 1995 WL 264700 (Del. Super. Apr. 18, 1995), *aff'd*, 670 A.2d 1338 (Del. 1995), *McKinnon v. Gen. Metalcraft*, 1991 WL 113335 (Del. Super. June. 12, 1991), *Chubb v. State,* 961 A.2d 530 (Del. 2008).

**D. There is Substantial Evidence for the IAB's Finding That Employer Failed to Meet Its Burden in Showing Availability of Regular Employment Within Claimant's Capabilities.**

When an employee shows that he or she is a *prima facie* displaced worker, it is the employer's burden to then show that there is regular employment available within the displaced worker's capabilities.[25] Employer argues there is substantial evidence of employment available to Claimant within his physical, educational, and vocational limits. Employer references its labor market survey, which identified nine employment opportunities, in support of its arguments.

The IAB concluded that Claimant's work abilities were severely restricted. It considered the FCE results that showed Claimant is capable of working only part-time and in a sedentary capacity. It looked to Claimant's treating physicians' testimony, both of whom considered the FCE results and ultimately determined Claimant should not work. The IAB considered the testimony of the doctors, the obvious injury, and the inability to perform an FCE test in a single session and determined that there was no job described by Mr. Perry which Claimant could perform, even in a part-time capacity. A reasonable mind can look at this evidence and conclude that none of the jobs presented fit within Claimant's capabilities.

---

[25] *Chrysler Corp v. Duff*, 314 A.2d at 916–17.

15

The IAB relied upon substantial evidence to support its finding that Employer had not met its burden in showing the availability of regular employment within Claimant's capabilities.

## V.     CONCLUSION

For the forgoing reasons, the IAB's decision is **AFFIRMED.**

**IT IS SO ORDERED.**